**In re HILLTOP SAND & GRAVEL, INC., Hilltop Dredge, Inc., Debtors.**

**Bankruptcy Nos. 583–1069, 583–1070.**

United States Bankruptcy Court,
N.D. Ohio.

Oct. 17, 1983.

Vacated and remanded, Dec. 16, 1983.

John J. Guy, Akron, Ohio, for debtors.

## FINDING AS TO APPOINTMENT OF COUNSEL

HAROLD F. WHITE, Bankruptcy Judge.

These cases were commenced by the filing of petitions for Chapter 11 Arrangements in this Bankruptcy Court on July 25, 1983. On August 4, 1983 debtors filed their Statement of Affairs and schedules of creditors.

On August 1, 1983, debtors filed a motion to have John J. Guy of the law firm of Guy, Mentzer & Towne appointed as counsel for debtors-in-possession. Attorney Guy, upon request of this court, filed his Affidavit of proposed attorney in order to comply with the Rule 5002 of the Bankruptcy Rules of Procedure. In that affidavit it is stated that an associate of the firm of which Mr. Guy is a member, Guy, Mentzer & Towne, is related by marriage to a district judge for the Northern District of Ohio.

On August 1, 1983 the Bankruptcy Rules governing practice and procedure in the Bankruptcy Court under Title 11, as adopted by the United States Supreme Court on April 25, 1983, became effective. Rule 5002 of those Rules states in part that:

> No person may be . . . employed as an attorney . . . pursuant to Section 327 or Section 1103 of the Code if (1) the person is a relative of any judge of the court making the appointment or approving the employment. . . Whenever under this rule a person is ineligible for appointment or employment, the person's firm, partnership, corporation, or any other form of business association or relationship, and all members, associates and professional employees thereof are also ineligible for appointment or employment.

The issue thus is presented as to whether John J. Guy may be employed as counsel for the debtors-in-possession in light of his statement in the Affidavit that an associate in his law firm is related by marriage to a district court judge. This issue presents two questions. The first one is whether the associate in question is within the degree of kinship necessary to come within the proscription of this Rule and the second one is whether relationship to a district court judge results in a prohibition against the appointment of attorney John Guy pursuant to 11 U.S.C. sections 327 and 1107(a) and Rule 5002.

The term "relative" is defined at 11 U.S.C. Section 101(34) as meaning:

[an] individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree;

The Advisory Committee Note to Rule 5002 in discussing this rule states, in part, as follows:

Persons within the third degree under the common law system are as follows: first degree—parents, brothers and sisters, and children; . . .

As the associate of Mr. Guy is the daughter-in-law of a district judge, she is within the first degree of kinship, by affinity. Accordingly, Mr. Guy's associate is a relative of a district court judge.

In the Matter of *Cle-Ware Industries, Inc.,* 493 F.2d 863 (6th Cir.1974) Judge Phillips said:

In order to avoid the double expense of attorneys' fees for bankrupt estates in this Circuit, we today announce the general rule that hereafter we will not approve the practice of appointing and compensating separate counsel for the debtor-in-possession and at the same time compensating the debtor's privately-retained counsel for legal services rendered after the filing of a petition for a plan of arrangement.

■ Further, in the *Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983) Judge Tate held:

However, whatever lack of clarity of the statute might have been perceived as to the obligation of a debtor in possession to obtain prior court approval for employment of an attorney to represent him in Chapter 11 reorganization proceedings, the rules of bankruptcy procedure adopted by the Supreme Court make plain such obligation.

Therefore, it is necessary in a Chapter 11 proceedings that the debtor-in-possession obtain Court approval in retention of counsel.

The second question requires the Court to determine which court it is that is making the appointment herein. Although nominally it is the bankruptcy court, the effect of the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982) must be examined in order to determine whether the appointing court is actually the district court.

The Bankruptcy Reform Act of 1978 made massive changes to the jurisdictional basis for the bankruptcy courts of this nation. 28 U.S.C. Section 1471 provided that the bankruptcy court was to have jurisdiction over all cases under title 11, and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. 28 U.S.C. Section 1471(a), (b), (c). The Act further provided for exclusive jurisdiction for the bankruptcy court over all property of the debtor. 128 U.S.C. Section 1471(e). The Bankruptcy Court itself was to be an adjunct to the district court for the district and was to be known as the "United States Bankruptcy Court". 28 U.S.C. Section 151(a).

It has been stated that:

One of the main reasons for reforming the bankruptcy court system was that under the old "referee" system the bankruptcy court was not truly and completely a court. It was not independent but had to operate under the supervision of a district court. This lack of independence hampered the bankruptcy court's operation both administratively and substantively. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 4 (1977). *Marathon Pipeline Company v. Northern Pipeline Construction Co.,* 12 B.R. 946 (D.C.Minn.1981), aff'd, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The Act provided for a five-year transition period commencing October 1, 1979 and ending March 31, 1984. Section 404(b), Title IV. During this period, "the courts of bankruptcy, as defined under section 1(10) of the Bankruptcy Act . . . [were to] continue through March 31, 1984, to be the courts of bankruptcy for the purposes of this Act

[Bankruptcy Reform Act of 1978] and the amendments made by this Act". Section 404(b), Title IV. During the transition period, the "courts of bankruptcy" have had full authority to perform all acts provided for under the Bankruptcy Reform Act. Section 405(b), Title IV.

The term "courts of bankruptcy" is defined at Section 1(10) of the former Bankruptcy Act to "include the United States district courts and the district courts of the Territories and possessions to which this Act is or may hereafter be applicable . . ." The effect of Section 404(a) of the Bankruptcy Reform Act is to continue the status of the district court as a court of bankruptcy during the five-year transition period presently in progress. *In re Matlock Trailer Corp.,* 27 B.R. 318 (D.C.M.D.Tn. 1983).

During the first two and a half years of the transition period, 28 U.S.C. Section 1471(c) operated in such a manner that the bankruptcy courts exercised exclusive jurisdiction over all bankruptcy matters. However, on June 28, 1982, the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Company, supra,* held that the grant of jurisdiction to the bankruptcy courts in 28 U.S.C. section 1471 was unconstitutional. A stay of this decision was granted until October 4, 1982 and then extended to December 24, 1982. Congress having failed to take any action prior to December 24, 1982, the decision in *Northern Pipeline* became effective and the constitutional basis of the bankruptcy courts was rendered unconstitutional.

In order to fill the void left by the decision in *Northern Pipeline,* the District Judges for the Northern District of Ohio unanimously adopted a local rule, being General Order 61, which is a model rule (known as "The Emergency Rule") to deal with Bankruptcy Court jurisdiction. Under this Emergency Rule, the Bankruptcy Judges were authorized to perform all duties necessary in a bankruptcy case except for such proceedings requiring a jury trial or proceedings in criminal contempt or to enjoin another court. Emergency Rule, Section (d)(1). Those proceedings delineated in the Emergency Rule as being "related proceedings" may not be finally disposed of by a bankruptcy judge. Instead, a proposed finding by the bankruptcy court is to be submitted to the district court for approval. Section (d)(3)(A), (B). In reviewing the proposed finding, the district court may hold a de novo hearing should it so choose. Section (e)(2)(B). The Emergency Rule was found to be valid and constitutional by the Sixth Circuit Court of Appeals in *In Re White Motor Corp.,* 704 F.2d 254 (6th Cir. 1983).

Although there may have been some disagreement prior to *Northern Pipeline* regarding the role of the district court in bankruptcy matters, there now can be none in this circuit. The bankruptcy courts in this district are presently capable of acting on bankruptcy matters only because of the Emergency Rule. In so acting, however, they are acting on behalf of the district court. As stated in *In Re Color Craft Press, Ltd.,* 27 B.R. 962 (D.C.D.Utah 1983):

The bankruptcy judges to whom the matters are referred [under the Emergency Rule] are not exercising invalid power. They are acting for and on behalf of the United States District Court and are subject always to the ultimate exercise of power by the district court judges. This is consistent with the jurisdictional grant to the United States District Court through the enactment of Section 1334. It allows the power to be exercised by an officer of the court to whom the matter has been referred, it utilizes existing staff and expertise, and provides for an orderly administration of cases and controversies until such time as Congress acts, if it chooses to act.

And in finding the Emergency Rule valid, the Sixth Circuit in *In Re White Motor Corp., supra,* stated that:

The interim rule does not violate the Constitution because the district courts retain primary jurisdiction over all bankruptcy proceedings. The bankruptcy courts have only derivative jurisdiction. They do not

operate under an exclusive grant of jurisdiction as in section 1471(c) but rather derive their jurisdiction from the district courts as under the Chandler Act. The district courts retain control and primary jurisdiction for the conduct of bankruptcy proceedings.

Accordingly, when this Court acts on debtors' application to have Mr. Guy appointed, it is acting not on its own behalf but instead on behalf of the District Court for the Northern District of Ohio.

The District Court for the Northern District of Ohio is the "Court of Bankruptcy" during this transition period. In acting on the instant applications, this court is acting in the stead of the District Court as under *Northern Pipeline,* this Court has no constitutional authority to act on bankruptcy matters. As such it is the District Court which is the "court making the appointment" referred to in Rule 5002. To hold otherwise would allow an act to be done indirectly which act could not be done directly.

Although Mr. Guy himself is not a relative of any judge of the Court of Bankruptcy, Rule 5002 provides that not only the relative but also the relative's firm and any member of that firm is ineligible for appointment or employment by the Bankruptcy Court. As set forth in the Advisory Committee Note to this Rule,

> In order for the policy of this rule to be meaningfully implemented, it is necessary to extend the prohibition against appointment or employment to the firm or other business association of the ineligible person and to those affiliated with the firm or business association.

The Advisory Committee Note for Rule 5002 indicates that this rule is adopted from former bankruptcy rule 505(a). The former rule prohibited the appointment of trustees, receivers, marshals, appraisers, and auctioneers in a bankruptcy case if the person to be appointed was a relative of any judge or referee of the court making the appointment or authorizing the employment. Rule 5002 expands the prohibition to include attorneys.

In a recent seminar on the Bankruptcy Rules, which was attended by six members of the Advisory Committee on Bankruptcy Rules, one member of the committee stated that attorneys were included in the new rule for the purpose of maintaining integrity in bankruptcy administration in the bankruptcy courts. It is evident then that it was the intent of the drafters of this rule that the appointment of Mr. Guy not be permitted as an associate of his firm is related by marriage to a Judge of the Court of Bankruptcy for the Northern District of Ohio.

In a letter dated July 26, 1983 written by the Honorable Peter W. Rodino, Jr., Chairman of the Committee on the Judiciary for the United States House of Representatives, to the Honorable John F. Seiberling, a member of the same committee and Representative for the District in which this Court is located, Mr. Rodino states: "Rule 5002 is intended to prevent even the appearance of any impropriety in dealing with the funds of a bankrupt estate. It prohibits the appointment of any person who is a relative of any judge of that bankruptcy court". Avoidance of the appearance of impropriety requires this Court to find that not only the relative but also the relative's firm and any member of that firm is ineligible for appointment or employment by the Bankruptcy Court. As set forth in the Advisory Committee Note to this Rule, John J. Guy is not eligible for employment as debtors' attorney herein.

Therefore, it is the conclusion of this Court that the applications filed by debtors, Hilltop Sand & Gravel, Inc. and Hilltop Dredge Inc., for authority to employ and appoint John J. Guy under a general retainer should be denied.