In re NATIONAL STORE FIXTURE COMPANY, Debtor.

Bankruptcy No. 83–01994–2.

United States Bankruptcy Court, W.D. Missouri.

Feb. 24, 1984.

---

Charles E. Rubin, Kansas City, Mo., trustee.

Jack N. Bohm, Kansas City, Mo., for debtor.

Richard K. Willard, Acting Asst. Atty. Gen., Robert G. Ulrich, U.S. Atty., E. Eugene Harrison, J. Christopher Kohn, Asst. U.S. Attys., Kansas City, Mo., for the United States.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

In this case debtor has moved to disqualify and remove the trustee by reason of the language of Rule 5002, Rules of Bankruptcy Procedure. That Rule provides that:

"No person may be appointed as a trustee or examiner or be employed as an attorney, accountant, appraiser, auctioneer, or other professional person pursuant to § 327 or § 1103 of the Code if (1) the person is a relative of any judge of the court making the appointment or approving the employment or (2) the person is or has been so connected with any judge of the court making the appointment or approving the employment as to render such appointment or employment improper. Whenever under this rule a person is ineligible for appointment or employment, the person's firm, partnership, corporation, or any other form of business association or relationship, and all members, associates and professional employees thereof are also ineligible for appointment or employment."

The Court finds that there are no disputes of material fact, that no hearing is necessary and that the issue may be resolved on the pleadings and briefs of the parties and of the United States which has intervened.

The Court takes judicial notice of the following facts:

(1) The trustee is a member of the panel of trustees of this court, having been so

selected by the Director of the Administrative Office of the United States Courts pursuant to powers granted the Director by § 604(f) of Title 28, U.S.C.

(2) The trustee was selected by an employee of the office of the Clerk of this bankruptcy court by determining which member of the panel was eligible for appointment in this asset case. The trustees are appointed in asset cases on a rotating basis and a trustee is eligible generally when his last appointment in such a case is prior to the time any other trustee was appointed.

(3) No judge of the bankruptcy court is consulted when such an appointment is made.

(4) The order of appointment is executed by the Clerk of the court or her designee using a signature stamp of the judge who draws the case, again by rotation selection.

(5) The trustee in this case is a member of a firm in which another member is a son of a sitting bankruptcy judge of this district.

### I

Prior to the effective date of Rule 5002 which was August 1, 1983, the rule on prohibited appointments was Rule 505 which provided that:

"(a) **Appointment or Employment of Relative of or Person Connected with Judge or Referee.** No person may be appointed as trustee, receiver, marshal, or appraiser or employed as accountant or auctioneer in a bankruptcy case (1) if he is a relative of any judge or referee of the court making the appointment or authorizing the employment, or (2) if he is so connected with any judge or referee of the court making the appointment or authorizing the employment as to render such appointment or employment improper.

(b) **Disqualification of Judge or Referee from Acting in Case: Relationship to Party or Attorney; Interest in Case; Appearance of Influence.** Any judge or referee shall disqualify himself in any bankruptcy case (1) in which he is a relative of any party or his attorney, has a substantial, direct or indirect interest, has been of counsel, or is or has been a material witness, or (2) if his acting therein would justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position, or influence of any party or other person.

(c) **Disqualification of Judge or Referee from Authorizing Employment of Attorney.** Any judge or referee shall disqualify himself from authorizing the employment and from determining the compensation of (1) a relative as an attorney in a bankruptcy case, or (2) an attorney in a bankruptcy case if the judge or referee is so connected with the attorney as to render it improper for him to authorize such employment".

Rule 505(a) prohibited appointment as trustee, receiver, marshal or appraiser as well as employment as accountant or auctioneer of a person who was "a relative of any judge or referee of the court making the appointment". The fair reading of the provision was to the effect that no judge or referee could appoint to any of the named positions a relative of any judge if all the appointing officers sat on the same court as, for example, judges of a multi-judge district.

But a relative could serve as attorney in bankruptcy matters, even as attorney for the trustee. See the advisory committee note to Rule 505. The language of Rule 505(a) did not prohibit the appointment or employment as attorney of a relative of any judge of the court, but only barred the related judge from authorizing employment or approving compensation. Rule 505(c).

The revision of the Rule broadened its reach. The prohibitions contained in Rule 505(a) were carried over but redefined and enlarged. Under Rule 5002 no relative of any judge of the court could be appointed as trustee or examiner or employed as attorney, accountant, appraiser, auctioneer or other professional person. In addition the last sentence of the Rule extends the ineli-

gibility to the relative's "firm, partnership . . . or any other form of business association . . .".

Attorneys were added to the group of categories from which relatives were barred. The class prohibited from serving is enlarged beyond blood lines to include persons involved in certain types of business relationships with the relative. In the instance before the Court the trustee sought to be removed is a law partner of a relative of a judge of the court. The plain language of Rule 5002 prohibits such an appointment.

## II

Various sections of the Bankruptcy Code apply to trustees. Section 321 provides that "[a] person may serve as trustee in a case under this title only if such person is—(1) an individual that is competent to perform the duties of trustee and, in a case under chapter 7 . . . resides or has an office in the judicial district within which the case is pending . . .". The trustee here has served for many years in that capacity. He has an office in this judicial district.

There is no suggestion that the word "competent" is used as a term of art as, for example, it is used in mental health statutes. Rule 209, Rules of Bankruptcy Procedure, *In re Leader Mercantile Co.*, 36 F.2d 745 (5th Cir.1929); *Matter of Chapter 13 Cases*, 19 B.R. 713 (Bkrtcy.W.D.Wash.1982); *In re Parr*, 3 B.R. 692 (Bkrtcy.E.D.N.Y. 1980). A person may be competent to perform the duties of the trustee even though he might not be eligible. The trustee here is competent.

Section 322 provides for qualification of a trustee once selected. The prerequisite is that the person selected post a bond in the amount required by the court with sufficient surety. Section 701 provides for the appointment of an interim trustee who is a disinterested person. Section 702 sets forth procedures for the election of a trustee by creditors. Section 1104 permits appointment of a trustee in a reorganization case. Section 1302(d) authorizes appointment of a standing trustee in the district to manage Chapter 13 cases. None of these statutory

provisions prohibits appointment of a person who has a business relationship with a person who is himself ineligible to be appointed by reason of consanguinity.

The thrust of Rule 5002 as it applies to the facts here is the suggestion that being related to a judge taints both the court on which the judge sits and the firm in which the relative works so that judicial colleagues and law partners cannot be relied upon to obey the canons of ethics and laws which prescribe their conduct. See the advisory committee note to Rule 5002.

Prior to the promulgation of this Rule the conduct of a judge in situations where there was potential conflict was left to the sound discretion of the individual judge with certain narrow exceptions. Section 455, Title 28, U.S.C., *Weiss v. Hunna*, 312 F.2d 711 (2d Cir.1963); *McNellis v. Dubnoff*, 285 F.Supp. 563 (D.C.N.D.N.Y.1968). *In Matter of Horton*, 621 F.2d 968 (9th Cir.1980), the court ruled that the presence at debtor's trial of a judge who had disqualified himself from hearing the case was not coercive upon the judge presiding. Apparently the revisers of the Rule thought consanguinity more invidious than actual presence. See also *Centre, etc., v. Mabey*, 19 B.R. 635 (D.C. Utah 1982).

Section 458 of Title 28, U.S.C., prohibits appointments or employment of a relative of any judge of a court to any office or duty in such court. This statute existed side by side with Rule 505 which, as noted above, clearly permits a relative of a judge to serve as attorney (an officer of the court) in cases pending in that court. There are no decisions interpreting the statute as it applies to bankruptcy practice, but a fair conclusion seems to be that Section 458 does not prohibit relatives of judges from practicing in certain roles in the bankruptcy court. In addition, prior to the adoption of Rule 5002, there was a presumption that practitioners would not be tainted by association with a relative of a judge.

## III

■ There is nothing in the advisory committee notes to suggest that the bank-

ruptcy system has less integrity after August 1, 1983, than it contained before that date. The extension then of the prohibition against appointments must be based upon conjecture that such extension is necessary to avoid abuse. The practice before this Court provides no evidence to support such a conclusion.

The newly adopted Rules of Bankruptcy Procedure contain safeguards against abuse. Rule 2013(a) requires a proportioning of appointments of trustees to avoid disparity of compensation. Rule 2013(b) requires the clerk to maintain a public record of fees paid trustees. In a non-asset case the fee paid the trustee is set. Section 330(b) of the Code. In an asset case the trustee's fee is calculated by formula, Section 326(a) of the Code, and must be approved by the court after notice to creditors and an opportunity for hearing.

At the same time appointments to the panel of trustees are limited to enable the panel trustees to earn certain minimum levels of income. The Director of the Administrative Office recognizes and abets this policy decision. Thus, limited access to certain aspects of the bankruptcy practice, deplored by the Commission and the Congress, are perpetuated by statute.

In its intervenor's brief the United States makes essentially two arguments. One is that there is no constitutionally protected right to be a trustee. The second is that the rule is a rational safeguard against prior vices. The United States concedes, however, that among rights constitutionally protected are freedom of association, the right to engage in a particular profession or activity and where "participation in an occupation or activity has been foreclosed entirely or where future opportunities have been frustrated through injury to profession or reputation". *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The Rule does infringe upon the right of association. It does infringe on the right to engage in a particular activity. Future opportunities are frustrated through injury to profession and reputation. The impact of the Rule is that one may be a partner in a law firm where a relative of a bankruptcy judge is also a member, but one cannot then be a trustee. The suggestion made by the United States that the party can withdraw from such association is facile. Such associations, as law partnerships, are not arranged or destroyed based upon eligibility to be a bankruptcy trustee.

In such an association, the affected party could not be a trustee. Thus his right to engage in a particular activity is infringed. But it would appear that such an affected person could be elected trustee as there is no requirement in the statute, Section 702 of the Code, that the Court make an order of appointment. Official Form 23 contemplates an order approving the election but there is no such statutory requirement. Clearly, though, the Court could not approve the final settlement because that would allow the trustee compensation. Nor could such an elected trustee make application to appoint himself as attorney even though such a procedure is clearly contemplated by the Code, Section 327(d), because the appointing order is clearly prohibited by the Rule.

Future activities are frustrated. The trustee must be a resident of the state served by the court or an adjacent state. Section 604(f), Title 28, U.S.C. As a practical matter the trustee is only appointed for a judicial district which may encompass less than a state. For equally practical purposes a panel trustee rarely serves outside the division of the Court in which he resides or has his office. At remuneration of $20 per case, travel is not economical. Thus, a person disqualified from serving in the judicial district in which he has an office has little or no opportunity to be appointed in another jurisdiction.

In its brief the United States contends that "a trustee in bankruptcy is appointed merely on a case-by-case basis. Thus, the trustee in this case has no judicially protectable expectation whatsoever that he will be appointed to serve in any given case in the future". This is not an accurate recitation of the facts. After the trustee is appointed

to the panel he is regularly appointed to cases on a rotation basis. The number of appointments is limited to maximize income. A panel trustee may only be removed for cause. Section 604(f), Title 28, U.S.C. Thus, once appointed, and absent cause, the trustee has a very real expectation of further appointments. The Court can only remove a trustee in a particular case, Section 324 of the Code, but may not remove a trustee from the panel. The Court may only recommend such removal to the Director of the Administrative Office.

A provision that a person may be removed from a position only "for cause" carries with it connotations of a removal procedure cloaked with protections of due process. There must be "notice and opportunity for hearing appropriate to the nature of the case". *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

> "What the Constitution does require is an opportunity ... granted at a meaningful time and in a meaningful manner ... for a hearing ... That the hearing required by due process is subject to waiver, and is not fixed inform does not affect its root requirement that an individual be given an opportunity for hearing *before* he is deprived of any significant property interest ...". *Boddie v. Connecticut,* 401 U.S. 371, 378–379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

See also *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

In the particular case here the Rule creates an irrebuttable presumption that the trustee is not qualified to perform his duties in this jurisdiction. Compare *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63, (1973). Such presumptions are not favored. No matter what the character of the trustee, he cannot overcome the presumption. In *Vlandis,* supra, the Court struck down a state statute branding certain students as non-residents throughout their academic career without regard to the true state of their residency. There was no procedure for challenging the classification. The United States, in its brief here, concedes that the statute in *Vlandis* would not pass substantive due process review.

■ The United States attempts to distinguish the line of cases typified by *Vlandis,* supra, including *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) and *Dept. of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973), by contending that they rest upon equal protection grounds. But it is also clear that the initial objection must be to the absence of any procedure for testing the classification. A statute which prohibits proof to the contrary is a denial of due process. *U.S. v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). What follows, after a due process hearing, is the conclusion that the classification is invidious and a denial of equal protection.

■ Equal protection constraints do not apply against the United States. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). But "a patently arbitrary classification, utterly lacking in rational justification" may well be a denial of due process. *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).

Promulgation of the Rule, in the context of this case, constitutes a denial of due process. The trustee here has certain vested rights by virtue of his membership on the panel of trustees. He may not be deprived of those rights without notice and hearing. *Shaw v. Hospital Authority of Cobb County,* 507 F.2d 625 (5th Cir.1975). Remedies for misconduct cannot be imposed by ignoring fundamental constitutional rights. *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

## IV

■ The restriction in Rule 5002 against associates is both arbitrary and irrational.

It purports to eliminate the appearance of impropriety by banning not only the appointment of relatives of judges but also persons associating with such relatives. As the Court has pointed out above, this bar would not prevent the person tainted by association from being elected a trustee. The Rule goes far beyond statutory qualifications and is not consistent with those qualifications. Sections 321 and 322 of the Code.

In describing and circumscribing the rational basis test, the Supreme Court has established balancing considerations. "What legitimate [governmental] interest does the classification promote? What fundamental personal rights might the classification endanger?" *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 173, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972). In *Stanley v. Illinois,* supra, the Supreme Court rejected the notion that the convenience of a presumption was constitutionally sound in view of the fact that more precise tests were available. The "Constitution recognizes higher values than speed and efficiency". 405 U.S. at 656, 92 S.Ct. at 1215.

More precise tests are available here. Attorneys may move to disqualify a judge or remove a trustee if fairness becomes an issue. The Director of the Administrative Office may remove a trustee for cause and appears to be the sole determiner of whether an applicant is appointed to the panel in the first instance. The prohibition contained in the Rule is not effective as is pointed out herein. It invades and diminishes fundamental rights and is not constitutionally defensible. *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

Despite its supposedly broad prophylactic purpose the Rule has already been held not to apply to relatives of judges of the District Court. *In re Hilltop Sand & Gravel,* 33 B.R. 839, 11 B.C.D. 3 (Bkrtcy.N.D.Ohio 1983), reversed on appeal, *In re Hilltop Sand & Gravel,* 35 B.R. 412, 11 B.C.D. 377 (D.C.N.D.Ohio 1983).

In reversing, the District Court held that the District Court was not the court identified in Rule 5002. Leaving aside interesting questions arising out of the referral jurisdiction by which bankruptcy courts receive cases, consider only the appearing of impropriety. At the present time the District Court recommends the appointment of bankruptcy judges for the respective districts. The District Court exercises appellate jurisdiction generally, including the review of fee allowances. The District Court may sign orders in related proceedings arising out of case administration. The District Court can withdraw, on its own motion, a case from the Bankruptcy Judge. The appearance of impropriety survives the separation of courts.

There are safeguards in both the Code and the Rules, beyond the restrictions contained in Rule 5002, that insure a fair distribution of cases among trustees and adequate disclosure of fees earned. The judges of the bankruptcy court no longer select trustees and do not appoint them on a case by case basis. In a rare instance, as when a case is converted from reorganization to liquidation, the Court could appoint. But more often the selection is made from the panel with the next eligible person being chosen. In approximately four years on the bench, this writer has knowingly made four or five appointments. In the same period of time this Court has processed about 24,000 estates in which trustees were appointed. Annual Reports of the Administrative Office. Clearly the appearance of impropriety, given such numbers, is less than a needle in a haystack.

Admittedly the bankruptcy trustees and the bankruptcy bar, in any particular judicial district, comprise a small group. This is neither the fault of the courts nor the bar. Likewise, other specialized bars are small in numbers. But it is only in the bankruptcy area, where the court must make many ministerial appointments, that the prohibition of association prevails. Relatives of judges of other courts may practice in those courts.

The extension of the Rule 5002 prohibition to persons associating with a judge's relative is tantamount to disbarment of those associates in the bankruptcy court. There is no such restriction in the United States District Court. In addition it is disbarment without due process, a procedure much condemned. *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Theard v. U.S.,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957).

The committee note suggests the extension is necessary if the policy is to be "meaningfully implemented". The Court is aware of the fact that the committee was divided on this issue. The Court is also aware that the creation of trustee panels was intended to eliminate abuse. But the reference to "bankruptcy rings" refers to the attorneys who practice before the bankruptcy courts. Other than condemning the small numbers, the evidence of misconduct is only semantic. The complaints come from non-bankruptcy lawyers. Commission Report, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Par. I at 93 and 109 (1973) reprinted in App. 2 Collier on Bankruptcy (15th Ed.) and the House Report Accompanying H.R.8200, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin. News 1978, p. 5787, at 88 ff, reprinted in App. 2 Collier on Bankruptcy (15th Ed.). Cannot the same complaints be made against members of the anti-trust or tax bars by attorneys not specializing in those areas? There is no evidence in either report that suggests that the sins lie with associates of relatives of bankruptcy judges. There is no rational relationship between the prohibition and the vice.

The Rule reaches incongruous results. A debtor may select his own attorney but if that attorney is tainted by an association, he may not represent that debtor in a Chapter 11 reorganization because the Court must approve the selection of the attorney. Section 327 of the Code. Similarly a creditor's committee could not select such a person as its attorney. Section 1103 of the Code. In a Chapter 7 asset case, the tainted attorney could not collect a fee if it had to be approved by the Court. A creditor, entitled to attorney fees because of its oversecured status, might not be allowed to collect them if represented by an attorney of its own choosing who was tainted by association. Strangely enough Rule 5004 contemplates fee awards for persons who are barred from appointment under Rule 5002. There is no reference in either rule to the inconsistency. While the question of attorney eligibility is not before the Court, this analysis buttresses the determination that extension of the Rule to bar the appointment of persons associating with a judicial relative is irrational.

V·

Pursuant to the provisions of Section 2075 of Title 28, U.S.C., the Supreme Court has the power to make rules for "practice and procedure in cases under Title 11. Such rules shall not abridge, enlarge, or modify any substantive right". There is a presumption that the Supreme Court acts constitutionally in promulgating rules but the rule cannot exceed a grant of federal authority. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Section 2075, Title 28, U.S.C. There is no authority to promulgate a rule which operates as here, to deprive a person of a right without due process or which exceeds the narrow mandate set out in Section 2075. *In re Itel Corp.,* 17 B.R. 942 (Bkrtcy.App. 9th Cir. 1982).

The Rule establishes an irrebuttable presumption that persons associated with a relative of a bankruptcy judge create an environment in the bankruptcy system which causes judges and lawyers involved in such an environment to lose their integrity. But that integrity is instantly restored if the tainted person moves to the adjoining judicial district to practice or takes only those bankruptcy cases where a judge makes no appointing or approving orders. How does this remove the air of impropriety, as for example in the Southern and Eastern Districts of New York, sitting in Manhattan and Brooklyn where undoubtedly the same bankruptcy bar practices in

both districts? At the same time the Court notes that there is a single judicial district in 27 states and firms tainted by the association are effectively disbarred in those entire states because the appointing court is statewide.

■ Irrebuttable presumptions are not favored. *Vlandis v. Kline,* supra. The presumption here, as has already been shown, is arbitrary and violative of due process. It is based upon an assumption that bankruptcy judges favor one another's relatives or those relative's associates who practice before them. Supposing the bankruptcy judges do not like each other? Why is not the same reasoning true at the District Court level where there are numerous opportunities for judges to award fees in situations which, if they occurred in the Rule 5002 context, would involve tainted associations? See, for example, Sections 2412 of Title 28, U.S.C. and 1988 of Title 42, U.S.C.

As the Court has stated before, it is no one's fault that the bankruptcy bar is small. Nor is it anyone's fault that creditors generally are not interested in being active in the administration of cases. Creditor interest is a function of economics. All of the legislation in the world is not going to change either the size of the bankruptcy bar or the amount of creditor interest. In the vast majority of cases creditors recover nothing. They will, therefore, not invest much time, effort or funds in finding out that truth.

Nor does the extension of the Rule eliminate the so-called "bankruptcy rings". Most lawyers do not practice bankruptcy law extensively because they have few clients involved in bankruptcy matters. This rule will not change that fact. The notion that bankruptcy lawyers are in cahoots with the judge and each other is patent nonsense. There is as much integrity in this area of practice as there is in any other. Did the committee drafting the Rule want clients to hire attorneys who know nothing about the subject and knowingly pay for their education? Do judges want only uneducated lawyers in their courts? And once educated, do these lawyers then become part of the "bankruptcy rings" and thus lose their integrity? To state these questions is to point out the impossibility and implausibility of what the Rule extension attempts to achieve.

The Court is aware of only two instances of alleged favoritism in the bankruptcy system. In one (Detroit) there was no family relationship. In the other (Cleveland), the family relationship was with a member of the District Court, a situation supposedly not reached by the Rule. The Commission Report records complaints of the non-bankruptcy bar. Cannot the same complaints be made about the anti-trust bar or the tax bar by non-members? There is simply no evidence that the Rule 5002 prohibition cures any failing in the system when balanced against the harm done to the bar and to the integrity of practitioners.

The attorney associated with a relative is deemed unfit, by the language of the Rule, to practice in a particular court. He is damaged in both profession and reputation. There is no procedure short of dissolving this association by which the tainted party can overcome the presumption. In the particular case at bar, the trustee is removed without a showing of cause. Such a procedure is not authorized by statute. Nor is this an instance where the Court should yield to legislative discretion. These rules were not promulgated as an exercise of legislative discretion. The mere fact that the Rules are transmitted to the Congress before the effective date is of little significance where, as here, the Congress held no hearings and took no action to stamp its imprimatur upon the document.

■ The Court holds that the extension of Rule 5002 to bar the appointment of those persons associating with a relative of a judge of the court making the appointment is void as a denial of due process. Such an extension deprives persons of their right of association, their right to engage in a particular profession or activity and frustrates future opportunities through injury to profession or reputation. The Rule causes removal of trustees without cause in violation of the restrictions imposed by the statute. There is simply no evidence of the

validity of the extension. The comments of the committee are not entitled to deference. Finally, the Rule violates the mandate set out in Section 2075 of Title 28 in that it abridges and modifies substantive rights.

The Motion to Remove is DENIED.

DENNIS J. STEWART, Bankruptcy Judge.

I wish to join Judge Pelofsky in his holding that Rule 5002 of the Rules of Bankruptcy Procedure is unconstitutional and unlawful insofar as it goes beyond the disqualification statute, section 455, Title 28, United States Code, in defining situations where the bankruptcy judge, as a matter of law, regardless of the factual context, must, in effect, recuse himself from appointing officers of the bankruptcy estate.

## I

The principal effect of the rule betrays its chief vice. That principal effect is to prohibit the bankruptcy court from making judicial factual determinations which can be essential and crucial in the administration of bankruptcy estates. While the manner of making proof of facts in disqualification proceedings is often carefully controlled, it ordinarily remains for the judge to draw the proper inferences and make findings as to the ultimate material facts, determining in the process whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Winston,* 613 F.2d 221, 222 (9th Cir.1980). The prohibition against the bankruptcy judge's doing so in respect of "associates" of persons ineligible to serve as officers of the estate is thus another significant detraction from the independence of the bankruptcy judiciary which is already reeling from a myriad of blows lately addressed to that same vital aspect of its system. It was foreseen with the passage of the Bankruptcy Reform Act of 1978 that the sitting bankruptcy judges were likely to be perceived as responsible for its provisions and punished accordingly. Thus, a congressional source has recorded among the history of that legislation that "(f)eeling ... is run-

ning high against bankruptcy judges for their role in the formulation of this legislation ... (R)etaliation ... would seriously impair the conduct of the bench during the early phases of the implementation of this new law. (But), toward the end of the transition period, patronage considerations may induce appointments of those who seek appointment to the new bench in preference to the sitting judges." Sen.Rep. No. 95–989, 1978 U.S.Code Cong. and Adm.News, p. 6415. True to this prophecy, bankruptcy judges of long and distinguished standing have been subjected to reviews by screening panels whose findings and recommendations are required neither to be based on verified facts nor rendered after the according of due process. The salaries of bankruptcy judges have been considered anything except free from tampering and are now said to be entirely evanescent, on the verge of complete disappearance. And their power to make factual determinations of issues arising under state law, even when the parties consent to bankruptcy court jurisdiction, has been impugned. See *1616 Reminc Limited Partnership v. Atchison and Keller Ltd. Partnership,* 704 F.2d 1313 (4th Cir.1983). The result has been the foreseen and apparently desired one, that of attrition of the best and brightest of the bankruptcy bench, their "judicial flight," as it is now commonly termed, to better paying and more secure positions. Yet, under the law of the land as it has been with some frequency asseverated, whatever the personal rights of bankruptcy judges and without regard to the correctness of the particular contentions which they have been and are advancing, they were only doing their public duty in attempting to further their independence by casting off the yoke of the many dependencies which had developed and augmented over the years. "In the light of (time honored and never discredited) views ... it is not extravagant to say that there rests upon every federal judge affected nothing less than a duty to withstand any attempt, directly or indirectly in contravention of the Constitution, to diminish his compensation (or other trapping of independence), not for his private advan-

tage—which, if that were all, he might be willing to forego—but in the interest of preserving unimpaired an essential safeguard adopted as a continuing guaranty of an independent judicial administration for the benefit of the whole people." *O'Donoghue v. United States,* 289 U.S. 516, 533, 53 S.Ct. 740, 744, 77 L.Ed. 1356 (1933). Now, however, the imposition of Rule 5002 may be the cruelest blow of all, purporting, as it does, to come from within, and requiring the bankruptcy judge, whenever its applicability comes into focus, to make findings which may or may not be justified by the particular circumstances, and always against his own integrity, not only as a factfinder, but in the deepest moral sense as well. The assurance that bankruptcy judges, trustees, and other officers of the estate can faithfully and honestly administer estates is lessened, rather than promoted, by a rule so broad that it must necessarily defeat its own purposes. In fact, such faithful and honest administration is made almost impossible, for every case must now be processed against the dread that sometime, somehow, and even retrospectively, its handling will be challenged on the basis of a remote connection between the trustee and a judge of the bankcourt which was not perceived at the time of the former's appointment. As the superficial and tangential in a trustee's qualifications become material, there is a likelihood that the material will come to be considered as superficial and tangential. With the reduction of the

pool of able trustees by the number of those with perceived remote connections with the court, the probability that those with real impediments will have to be pressed into service by accident, need, or otherwise, increases. And, again, the result must be a further reduction in the strength, numerical and otherwise, of the bankruptcy bench.

If this rule were imposed upon an Article III court, there can be little doubt that it would be invalidated as an unconstitutional infringement of judicial independence. It is commonly held that the legislative branch of government, for all its power to dictate substantive and procedural law to the Article III judiciary, cannot dictate how a court should determine genuine issues of material fact. "(O)nce Congress confers jurisdiction to try a case, it cannot withhold power to decide the case according to the applicable law." *Payne v. Griffin,* 51 F.Supp. 588, 591 (M.D.Ga.1943). Thus, it was held by the Supreme Court of the United States in *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871), that for Congress to enact a statute compelling courts of the United States to draw factual inferences which could be justified neither by common reason and experience nor by the surrounding facts and circumstances was an unwarranted encroachment on the independence of the judiciary, required the case arbitrarily to be decided against a party to it, and "passed the limit which separates the legislative from the judicial power."[1] The rule

---

1. The *Klein* case involved confiscation proceedings against property of former rebels in which the decisive issue was that of loyalty to the United States. "(I)t was the purpose of Congress that the proceeds of the property for which the special provision of the act was made, should go into the Treasury without change of ownership. Certainly such was the intention in respect to the property of loyal men. That the same intention prevailed in regard to the property of owners who, though then hostile, might subsequently become loyal, appears probable from the circumstances that no provision is anywhere made for the confiscation of it." 80 U.S. at 138. The President of the United States issued pardons to some former rebels which had the effect of determining them to be loyal. The Congress, however, enacted a statute providing that any pardon accepted without protest could not be accepted

as evidence of loyalty but, rather, must be accepted as conclusive evidence of disloyalty, both in the Court of Claims and on appeal. The Court of Claims nevertheless found for the claimant and, on appeal, the Supreme Court analyzed the matter as follows:

"The court is required to ascertain the existence of certain facts and thereupon to declare that its jurisdiction on appeal has ceased, by dismissing the bill. What is this but to prescribe a rule for the decision of a cause in a particular way? In the case before us, the court of claims has rendered judgment for the claimant and an appeal has been taken to this court. We are directed to dismiss the appeal, if we find that the judgment must be affirmed, because of a pardon granted to the intestate of the claimants. Can we do so without allowing that the legislature

of the *Klein* case has continued to be honored down to the present time.[2] Its imperative appears to be so necessary to even minimal independence of any judiciary that it must also be held to apply to the bankruptcy court—despite its current lack of Article III character—so as to invalidate the portions of Rule 5002 which require the inference, in every case, that members of the same law firm as a relative of or "person connected" with a non-appointing member of the bankruptcy court cannot be anything but corruptly appointed by a member of the court.

In respect of non-Article-III legislative courts, it has sometimes been held that, because they adjudicate only "public rights," a considerable degree of depreciation of their independence can be tolerated. It is said that this is so because there is no absolute right in law and justice for an individual to assert his claim against the government; that the government permits him to do so only as a matter of grace; and that, therefore, the absence of an altogether independent judiciary is something that must be accepted as part of the price of being granted to prosecute the claim

may prescribe rules of decision to the judicial department of the government in cases pending before it? .... In the case before us no new circumstances have been created by legislation. But the court is forbidden to give the effect to evidence which, in its own judgment, such evidence should have, and is directed to give it an effect precisely contrary .... Congress has already provided that the Supreme Court shall have jurisdiction of the judgments of the court of claims on appeal. Can it prescribe a rule in conformity with which the court must deny to itself the jurisdiction thus conferred, because and only because its decision, in accordance with the settled law, must be adverse to the government and favorable to the suitor? The question seems to us to answer itself." 80 U.S. at 146, 147. Seen from the standpoint of the litigant, this applied doctrine of the separation of pwoers is seen as the invocation of the due process standard under which the courts inquire as to whether the procedures to be employed are adequate to permit determination of the issue before a court or other adjudicative body. See, e.g., *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971) ("(A) hearing which excludes consideration of an element essential to the decision ... does not meet this standard (of due process)."); *Stanley v. Illinois,* 405 U.S. 645, 657, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972) ("Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure (by invoking a presumption that an unmarried father is an unfit parent) forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand."). But, in this matter, the rule of the *Klein* case has more certain and determinative applicability. It is conceivable, for instance, that a procedure employing an irrebuttable presumption could satisfy the due process standards and still violate

the *Klein* rule simply because, as in this case, the legislative branch first conferred power to make the decision on the courts and then, in exercising its rulemaking power, dictated precisely how that decision should be made. Further, under the Fifth Amendment to the United States Constitution, the right to due process does not proceed *ex vacuo,* but rather, as the cases cited in the following section of the text make clear, must proceed from a liberty or property interest. Thus, in order to invoke the rule of *Bell v. Burson, supra,* and like cases, the party must demonstrate the existence of a property or liberty interest. Accordingly, while one may be entitled to due process as a matter of being terminated from a panel of trustees, he may not necessarily be entitled to such process as a prerequisite to not being included on such a panel or not being appointed as the officer of an estate. But the rule of *Klein,* under the separation of powers doctrine, can be invoked in either instance.

2.  *United States v. Brainer,* 691 F.2d 691, 695 (4th Cir.1982) ("We assume that the application· of existing law to the facts of a case properly before the courts is a judicial function which the legislature may not constitutionally usurp."); *California Medical Association v. Federal Election Commission,* 641 F.2d 619, 638 (9th Cir.1980) ("There are ... some limits on congressional authority over the judiciary; for example, Congress may not undermine the courts' capacity to make independent determinations of questions of law and fact in particular cases .... See also *United States v. Klein,* 80 U.S. (Wall.) 128, 147, 20 L.Ed. 519 (1872) (statute compelling court to ignore certain evidence which court believed to be relevant "passed the limit which separates the legislative from the judicial power").")."; *Memorial Hosp. v. Heckler,* 706 F.2d 1130, 1137 (11th Cir.1983).

against the government.[3] But these facile considerations cannot apply to the bankruptcy courts which, according to the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 2867, 73 L.Ed.2d 598 (1982), "Congress did not constitute ... as legislative courts," and whose decisions, moreover, frequently constitute precedents on which the daily commercial life of the American people is based. To manipulate the decisions of a court having so much significance to common usages of common men and women would be to subvert and deflect an important source of lawgiving. And manipulation in almost any form of any significant judicial tribunal is wholly foreign to the legal traditions of the United States.[4] If bankruptcy courts are to continue to be free

to make the decisions which lie at the heart and soul of its public mission, the rule now under consideration cannot be allowed to stand to impose its full oppressive weight against the sitting bankruptcy judges.

It is recognized, of course, that the *Klein* decision and its progeny were based upon the separation of powers doctrine; that they were accordingly designed to safeguard the judiciary against legislative encroachments and that it may be arguable that the strictures of Rule 5002 are not legislative restrictions, but only supervision imposed by the judiciary itself.[5] But it is acknowledged in virtually all the cases which deal with the question that there must necessarily be a limit to the judiciary's own internal discipline.[6] Whatever the co-

3. "We find nothing which militates against the(se) ... views in the requirement that the Court of claims ... in the provisions of the Tucker Act ... requiring the court in cases brought against the government also to consider and decide set-offs and other claims made by the government against the petitioner and award judgment accordingly .... the latter is simply a provision which the claimant must accept as a condition upon which he may avail himself of the privilege of suing the government in the special court organized for that purpose." *Williams v. United States,* 289 U.S. 553, 581, 53 S.Ct. 751, 760, 77 L.Ed. 1372 (1933). The Court so held, even though it recognized the undesirability of the lack of independence: "The sole function of the court being to decide between the government and private suitors, a condition, on the part of judges, of entire dependence upon the legislative pleasure for the tenure of their offices and for a continuance of adequate compensation during their service in office, to say the least, is not desirable." 289 U.S. at 562, 53 S.Ct. at 753.

4. "To date efforts to tamper with the federal judiciary have not been successful ... The States, of course, have mostly gone the other way. But as Prof. Kurland observed: '(T)he various devices that the States have recently adopted for policing their judiciaries are little more than polite blackmail, suggestions that the bar is unhappy with the judge's behavior and he'd better shape up or else. I shudder to think how (easily) the federal courts might have been deprived of the services of Judge Learned Hand ... For politeness to counsel and a willingness to tolerate fools gladly were not among his virtues, and it is only such virtues and that of regular attendance at the court house that the policing systems seem capable of evoking from timid judges.' The way to

achieve what is done today is by constitutional amendment ... Manipulated judiciaries are common across the world, especially in communist and fascist nations. The faith in freedom which we profess ... is opposed to those ideologies ..." *Palmore v. United States,* 411 U.S. 389, 410, 420, 421, 93 S.Ct. 1670, 1682, 1687, 1688, 36 L.Ed.2d 342 (1973) (dissent of Douglas, J.).

5. "Although Congress has generally delegated to the judiciary the power to make rules governing judicial practice and procedure, the final authority for rulemaking rests ultimately with Congress." *California Medical Ass'n v. Federal Elec. Com'n,* 641 F.2d 619, 638 (9th Cir.1980).

6. "Whether the action taken by the Council with respect to the division of business in Judge Chandler's district falls to one side or the other of the line defining the maximum permissible intervention consistent with the constitutional requirement of judicial independence is the ultimate question on which review is sought in the petition now before us .... These questions have long been discussed and debated; they are not easy questions and the risks suggested by the dissents are not to be lightly cast aside. But for the reasons that follow, we do not find it necessary to answer them because the threshold question in this case is whether we have jurisdiction to entertain the petition for extraordinary relief." *Chandler v. Judicial Council of Tenth Circuit of U.S.,* 398 U.S. 74, 84, 85, 86, 90 S.Ct. 1648, 1653, 1654, 26 L.Ed.2d 100 (1970). "One of the great advances made in the structure of government by our Constitution was its provision for an independent judiciary—for judges who could do their duty as they saw it without having to account to superior court judges or

nfiguration of such limits, they are almost certainly transgressed by a rule which would virtually eradicate the court's quintessential characteristic, that of a determiner of factual issues. The rulemakers themselves have elsewhere recognized the inalienability of this power of making factual determinations and drawing reasonable inferences from a court's identity as a judicial body. See Rule 8013 of the Rules of Bankruptcy Procedure; *In re Morrissey,* 717 F.2d 100, 104, 105 (3d Cir.1983). But, in this respect, they have, while honoring the principle in general, nevertheless violated it in this one highly important particular; and, in that particular, Rule 5002, accordingly, cannot stand side by side with the paramount principle of judicial independence.

## II

There is a second and independent reason why the rule, as applied to Mr. Rubin, must fail. As to him, who has been a member of the panel of trustees from its historical inception, its provisions would suddenly terminate his tenure as a member of that panel without any notice, opportunity for a hearing, or any evidence whatever of cause for such termination.[6a] It has been held, however, since *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), that a public official with a reasonable expectancy of continued employment is as entitled to due process in connection with his discharge as an employee with the for-

mal indicia of tenure. The only question which presents itself in this regard as having a semblance of significance is that of whether a member of the panel of trustees is the type of employee intended to be covered by this constitutional ruling. Formerly, in respect of a panel similarly created primarily for public service purposes,[7] the panel of attorneys created under the Criminal Justice Act to supply legal assistance to indigent defendants in criminal cases, our district court held in *Mee v. Becker,* 456 F.Supp. 224, 227 (W.D.Mo.1978), that the "Act ... is not intended as a full employment bill for attorneys"; that due process, accordingly, did not apply; and that an attorney, as a result, could lawfully be removed from the panel at any time, with or without cause, and without notice or opportunity of a hearing of any kind. Since that time, however, the rule of *Perry v. Sindermann, supra,* has been employed with increasing liberality to a broadening spectrum of classifications of public employees, some of whom have, in other contexts, not been regarded as public employees. As for trustees and receivers in bankruptcy, it was formerly held in *Cromelin v. United States,* 177 F.2d 275, 277 (5th Cir.1949), that neither a judge of the United States nor a trustee in bankruptcy were to be considered federal employees for purposes of the Federal Tort Claims Act. "The trustee, like a receiver, is an officer of court, appointed by the court, directed by the court, and paid by the court

to any one else except the Senate sitting as a court of impeachment." *Chandler v. Judicial Council of Tenth Circuit of U.S.,* 382 U.S. 1003, 1004, 1005, 86 S.Ct. 610, 610, 611, 15 L.Ed.2d 494 (1966) (dissenting opinion of Black, J.).

**6a.** Because of Mr. Rubin's having been on the panel of trustees, he should have the liberty and property interests necessary to bring the due process issue into focus. Others may not. In such cases, however, the rule of the *Klein* case has the broader applicability pointed up in note 1, *supra.* If due process is applicable, as Judge Pelofsky points out in his opinion, it is likely that the standards of *Bell v. Burson, supra* note 1, and *Stanley v. Ilinois, supra* note 1, require the court to condemn the presumption that association with a disqualified person must give rise to an equal cause for disqualification of the associate. But the preliminary

questions are the status of Mr. Rubin as a public employee with a property or liberty interest, or both. Because of the dominant applicability of the *Klein* rule to this matter, as pointed out in note 1, *supra,* and its dictates as to the scope of the factfinding process, this court need not go further today and define all the elements of due process in every type of instance in which a member of the panel of trustees may be terminated from that panel.

**7.** The element of public service, rather than private compensation, is still regarded as the principal hallmark of a trustee's duty, or that of the other officers of a bankruptcy estate. In the process of administration, they are to remember that "(c)learly the purpose of the Bankruptcy Act was to benefit creditors and debtors, not trustees." *In re Kokoszka,* 479 F.2d 990, 995, 996 (2d Cir.1973).

from the funds of the court. He is in no sense an agent or employee or officer of the United States. The judge is appointed by the President and confirmed by the Senate, and paid from the United States treasury, but in trying cases he is a member of the independent judiciary and is not under the control of the United States any more than a member of the legislative department in legislating." In extending the rule of *Perry v. Sindermann, supra,* however, to include a right against dismissal of nonpolicy-making, nonconfidential public employees for political reasons, the Supreme Court, in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), significantly broadened the scope of public employees to which constitutional protection of tenure applies. Subsequently, in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court extended the protection against unconstitutional dismissal to an assistant public defender, who, for other purposes, including that of official immunity, could not be said to be a public official. *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979). Presently, according to some holdings, even lower court judges and magistrates, once thought to be wholly at the mercy of their superiors once their limited tenure expired, are now entitled to due process as having an expectancy of reemployment by reason of any general practice of reappointing inferior judges and magistrates in the absence of any wrongdoing. *Lewis v. Blackburn,* 555 F.Supp. 713, 718, 721 (W.D.N.C.1983).[8] In light of these decisions, it seems possible that *Mee v. Becker, supra,* might well be decided differently today than it was in 1978. Even if a trustee in bankruptcy, moreover, is to be considered at this time as an officer of the court—despite his receiving remuneration from the government in each case and despite his selection and retention by the Administrative Office of the United States Courts—it would seem that he is entitled to the constitutional protections outlined in the decisions mentioned above.[9]

### III

Further, if it is public employment which the trustee, in virtually any sense, enjoys, then, even when there is no expectancy of continued employment or reemployment, it is constitutionally prohibited to discharge one from such public employment for the exercise of a constitutional right. *Perry v. Sindermann, supra; Roth v. Board of Regents,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Application of Rule 5002 to Mr. Rubin purely and simply results

**8.** It is elsewhere suggested in dicta that "if judicial office-holders have ... 'legitimate claim of entitlement' to preferential consideration of their petitions for reappointment by virtue of their incumbency," they may have a "cognizable property interest in their positions after the expiration of their fixed terms." *Richardson v. Koshiba,* 693 F.2d 911, 916 (9th Cir.1982).

**9.** Although the concept was slow and uncertain in developing, and still may be open to some doubt, the status of a trustee as a public employee or official within this line of cases seems to have been adumbrated in 1980 with the decision in *Branti v. Finkel,* 445 U.S. 507, 517, n. 12, 100 S.Ct. 1287, 1294, n. 12, 63 L.Ed.2d 574 (1980), which noted that "(t)he compensation of government employees, like the distribution of other public benefits, must be justified by a governmental purpose." Accordingly, it was held that that compensation should not be cut off in violation of the federal constitution. As a member of the panel of trustees, Mr. Rubin receives some compensation from the federal government. In this circuit, the precise contours of a "public employee" within the meaning of the *Perry, Roth,* and *Elrod* cases, were probably not filled in with any recognizable completeness until the decisions of our court of appeals in *Sweeney v. Bond,* 669 F.2d 542 (8th Cir.1982), and *Fox and Company v. Schoemehl,* 671 F.2d 303 (8th Cir.1982), when it was noted that payment by the government may not be the only determining factor; that some independent contractors paid in part by the government are not public employees; and that, additionally, there should be some governmental supervision of the daily operations or duties of a public employee. The members of the panel of trustees, in this district, are supervised by the clerk of the bankruptcy court. Thus, although, as Judge Pelofsky points out in his opinion, the statutory scheme of the Bankruptcy Reform Act of 1978 provides that a trustee may be removed from the panel only for cause, it was not until 1982 that it became clear that they may have been entitled to the full range of constitutional due process contemplated by the *Perry* and *Roth* decisions.

in his discharge from the panel of trustees because of his professional association with Frank P. Barker III, who is the son of the chief judge of our bankruptcy court. It thus unconstitutionally penalizes the right to freedom of association guaranteed him by the First Amendment to our Constitution. Nor can it reasonably be said that there is any countervailing and legitimate public interest which would justify suppression of that right, for it has not and cannot be shown that mere association, professional or otherwise, with a relative of a nonappointing judge necessarily means, without more, that the appointee will be more generously dealt with by the appointing judge than the law allows. No logic or experience, as Judge Pelofsky points out in his opinion, could justify such a finding, without additional facts relevant to particular cases.[10]

### IV

Finally, the full scope of the situations in which a judge may not appoint a trustee or other officer of an estate in a case over which he is to preside is adequately and fully defined by section 455, Title 28, United States Code.[11] In purporting to supplement that statute and extend it, the rulemakers have gone beyond their authority by adventuring into the realm of nonadjectival and substantive law and, to the extent they have done so, the rule is invalid.[12]

Because of these multifarious defects in Rule 5002, I concur in Judge Pelofsky's conclusion that it is constitutionally invalid and unlawful as applied to Charles Elliott Rubin, Esquire. And, having held that the

rule is invalid insofar as it prevents an associate of a relative of a nonappointing judge, regardless of the particular factual circumstances, from being appointed as an officer of the estate by another member of the court, it follows that the rule cannot stand as it applies to associates of other persons who, by reason of their connections with any judge, cannot be appointed by the court on which that judge sits.[13]

---

**10.** "(A)ny classification which serves to penalize the exercise of (a constitutional right), unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969) (Emphasis in original.)

**11.** Although there are other statutes which contain express prohibitions under special circumstances, section 455, in its broader scope, probably encompasses those and adds others under its supplementary "reasonable man" approach.

**12.** "As a matter of elemental law, the Federal Rules of Civil Procedure (or other procedural rules) do not create substantive rights (nor subtract therefrom) . . . Substantive federal rights are grounded in the Constitution of the United States and laws enacted by Congress." *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 694 (E.D.Pa.1973).

**13.** This invalidation is possible, even without a person before the court who can show the violation of a property or liberty interest, because of the application of the rule of the *Klein* case, as outlined in note 1, *supra*.