### In re MANAGEMENT DATA SERVICES, INC. Debtor.

**Bankruptcy No. 84–01557.**

United States Bankruptcy Court,
W. D. Washington,
at Seattle.

Nov. 20, 1984.

Robert A. Kreiss, Seattle, Wash., for trustee.

Robert D. Steinberg, Bellevue, Wash., trustee.

Richard Cohen, Asst. U.S. Atty., Seattle, Wash., for intervenor.

Memorandum Decision and Order Re Appointment of Counsel

SIDNEY C. VOLINN, Bankruptcy Judge.

## FACTS

The facts are undisputed. Debtor, Management Data Services, Inc., filed its petition under Chapter 7 of the Bankruptcy Code. The trustee was appointed from a panel of trustees selected by the Director of Administrative Office of the United States Courts without consultation with any bankruptcy judge pursuant to 28 U.S.C. § 604(f) [1]. The trustee seeks to employ an attorney pursuant to 11 U.S.C. § 327 which requires court approval of the trustee's chosen counsel.

Because the debtor's business consists of the manufacture of computers and software development for the telecommunications industry and because its assets are largely computer equipment or intellectual property in computer software, the trustee sought an attorney with a background in both computer and bankruptcy law. He selected attorney Robert Kreiss who holds a Ph.D. in mathematics, has taught mathematics, and worked as a computer programmer in California's "Silicon Valley." Mr. Kreiss has also taught courses in telecommunications law, copyright, trade secret, patent and trademark law at Benjamin N. Cardozo School of Law at Yeshiva University in New York. He authors a monthly article on computer-related law for Northwest Computing, a publication of the Northwest Computer Society. His law practice includes representation of clients in bankruptcy matters in this district.

Mr. Kreiss has filed an affidavit herein stating, *inter alia,*

9. My practice includes computer-related law and bankruptcy law. Since December, 1983, I have appeared before bankruptcy judges in the Western District and represented clients of Feinstein, McAulay and Bartlett in bankruptcy mat-

---

1. Pursuant to 28 U.S.C. § 604(f) and Bankruptcy Rule 2013, which requires, in effect, rotation of trustees, Bankruptcy Judges as a practical mat-

ter have no discretion in the appointment process.

ters. I would like to increase my practice in the bankruptcy law area.

10. I am willing to serve as attorney for the trustee in the above entitled proceeding. ·

Mr. Kreiss is an associate in a law firm which includes Larry Feinstein, a partner, who is the nephew of the wife of Judge Samuel J. Steiner, one of the four Bankruptcy Judges in the Western District of Washington. He has never met Judge Steiner.

Mr. Kreiss' employment as attorney for the trustee is barred by Bankruptcy Rule 5002 which provides:

> No person may be appointed as a trustee or examiner or be employed as an attorney, accountant, appraiser, auctioneer, or other professional person pursuant to § 327 or § 1103 of the Code if (1) the person is a relative of any judge of the court making the appointment or approving the employment or (2) the person is or has been so connected with any judge of the court making the appointment or approving the employment as to render such appointment or employment improper. Whenever under this rule a person is ineligible for appointment or employment, the person's firm, partnership, corporation, or any other form of business association or relationship, and all members, associates and professional employees thereof are also ineligible for appointment or employment.

### CONTENTIONS

The trustee seeks a declaration that Rule 5002 is invalid to the extent that it bars a trustee in bankruptcy from employing as his attorney an attorney who is an associate of a law firm in which a partner is a relative of a sitting judge in the district.[2] He contends that the Rule violates his First Amendment right to legal representation, his attorney's right to freedom of association, equal protection and due process, that the rule deals with substance rather than

procedure, and that the Rule is void because it is vague and overbroad.

The United States Attorney intervened by stipulation to support the constitutionality of Rule 5002 pursuant to 28 U.S.C. § 2403(a) and F.R.C.P. 24(a). He contends that the trustee lacks standing because he has suffered no injury and that he cannot argue any injury to his attorney because the attorney is not a party to the action. The United States further contends that no protected right to legal representation or freedom of association is violated, the requirements of equal protection and due process have been met, and the Rule is not impermissibly vague or overbroad.

The issues presented will be discussed under the subject headings hereinafter stated.

### I. STANDING

The United States alleges that the trustee lacks standing to challenge Rule 5002 because he has suffered no injury sufficient to meet the standing requirements of Article III of the Constitution. It is argued that the only injury the trustee asserts is inference with his right to employ counsel of his choice and since there is no constitutional right to counsel in a civil matter there is no justiciable controversy.

 The trustee seeks a declaration that Rule 5002 is invalid. 28 U.S.C. § 2201 creates the remedy of declaratory relief. It states that the court may

> ... declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Declaratory relief is appropriate where the facts alleged show that there is a substantial controversy between parties having adverse interests of sufficient immediacy and reality to warrant issuance of declaratory

---

**2.** This matter had originally come on to be heard before another bankruptcy judge of this court, Kenneth S. Treadwell, who recused himself because his son is an attorney who practices law in this district.

relief. *Evers v. Dwyer,* 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958); *Maryland Casualty Co. v. Pacific Coal and Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The standard is the same as the standard set forth in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), which states:

> As an aspect of justiciability, the standing question is whether or not the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691 [703], 7 L.Ed.2d 663 (1962) .... A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action...." (emphasis in original). *Id.* at 498–99, 95 S.Ct. at 2205.

In order to resolve the question of Article III standing it is not necessary to weigh the merits of the trustee's claim. *Id.* at 500, 95 S.Ct. at 2206, citing *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

■ The trustee will in fact suffer injury from the operation of Rule 5002. It is solely because of the Rule that he is unable to employ the attorney of his choice to represent the estate. He deliberately selected counsel with a background appropriate to the needs of the estate. His injury can be fairly traced to the challenged Rule and it creates a controversy with the United States that is real and admits of specific relief through judicial decree of a conclusive nature. This ensures litigation in a concrete factual setting. The trustee is not a mere debating partner. He has a real stake in the outcome. *Valley Forge College v. Americans United,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

■ Moreover, Mr. Kreiss, as indicated by the record, is before this court requesting that he be permitted to accept the employment proffered to him by the trustee. He is well qualified. The court would not hesitate to enter an order authorizing employment but for Rule 5002. Both he and the trustee have an interest in this matter. All interested parties are necessary parties. *Diamond Shamrock v. Lumbermen's Mutual Casualty Co.,* 416 F.2d 707 (7th Cir. 1969); *Franklin Life Ins. Co. v. Johnson,* 157 F.2d 653 (10th Cir.1946). It is a basic purpose of the declaratory judgment act that all parties having an interest in the outcome and who will be bound by it should be joined. *Diamond Shamrock, supra.* The trustee has in fact selected Mr. Kreiss to represent him and Mr. Kreiss accepts that employment. His rights as an attorney are inextricably involved in the court's decision. If the Rule is deemed valid, it will not be possible for him to be employed as attorney for a trustee or debtor in possession in this district. While Mr. Kreiss was not formally joined as a party in this matter, his affidavit makes his position clear. He has briefed and presented his position and that of the trustee at oral argument without objection from the United States. The court finds that Article III standing requirements have been met by both the trustee and the attorney he seeks to employ. He is deemed joined as a party for purposes of this declaratory relief motion.

## II. BANKRUPTCY RULE 5002: PROCEDURE OR SUBSTANCE

### A.

Bankruptcy Rule 5002 was promulgated pursuant to the statutory authority granted the Supreme Court by 28 U.S.C. § 2075 which states:

> The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under Title 11.
>
> Such rules shall not abridge, or modify any substantive right.
>
> Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May and until the expiration of ninety days after they have been thus reported.

A complete set of Bankruptcy Rules was prepared by an Advisory Committee appointed by the Chief Justice. The Committee's final draft was adopted by the Judicial Conference of the United States and thereafter submitted to Congress by the Chief Justice. Congress took no affirmative action and the draft became effective August 1, 1983.

 Court Rules must not transgress constitutional rights nor violate the terms of the enabling act. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). They must be consistent with statutory provisions. *In re Itel*, 17 B.R. 942, 944 (Bkrtcy.App. 9th Cir.1982); *Boehm v. Manhattan Railway Co.*, 289 U.S. 479, 503, 53 S.Ct. 721, 730, 77 L.Ed. 1331 (1933). Rules are entitled to a presumption that they were promulgated within the proper authority of the Supreme Court and do not affect substantive rights. *In re Itel, supra, HFG Co. v. Pioneer Pub. Co.*, 162 F.2d 536 (7th Cir.1947), *In re Wall*, 403 F.Supp. 357 (E.D.Ark.1975). A party contending that a rule violates substantive rights bears a heavy burden of proof. *In re Moralez*, 618 F.2d 76 (9th Cir.1980).

 Nonetheless, the court can refuse to apply a rule when it concludes that "the Advisory Committee, [the Supreme] Court, and Congress erred in their judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). *See also Meek v. Centre County Banking Co.*, 268 U.S. 426, 45 S.Ct. 560, 69 L.Ed. 1028 (1925) holding that the Supreme Court had improperly promulgated a rule of substance rather than procedure in formulating a General Order (an earlier form of bankruptcy rule) allowing a partnership to be adjudged a bankrupt on petition of one of its members; the court stated:

> The authority conferred upon this court by § 30 of the Bankruptcy Act to prescribe all necessary rules, forms, and orders as to procedure, and for carrying the act into effect, is plainly limited to

provisions for the execution of the act itself, and does not authorize additions to its substantive provisions. *George M. West Co. v. Lea Bros.*, 174 U.S. 590, 599, 19 S.Ct. 836, [839], 43 L.Ed. 1098, 1101. And see *J.B. Orcutt Co. v. Green*, 204 U.S. 96, 102, 27 S.Ct. 195 [197], 51 L.Ed. 390, 392.

### B.

It is in light of these rules that the court must determine whether Rule 5002, to extent it is challenged here, transgresses the requirements of the enabling act.

*Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) involved discovery rules of the Federal Rules of Civil Procedure. The court, while upholding the rules, recognized that Congress required that in enacting rules the court shall not "abridge, enlarge nor modify substantive rights." The court referred at p. 10 to "the invalidity of a court rule, to extend or restrict the jurisdiction conferred by a statute" citing various cases, including *Meek, supra*.

The court referred to the fact that Congress did not adversely react to the proposed rule. Justice Frankfurter in his dissent characterized the reaction of Congress to a proposed rule as follows:

> In this view little significance attaches to the fact that the Rules, in accordance with the statute, remained on the table of two Houses of Congress without evoking any objection to Rule 35 and thereby automatically came into force. Plainly the Rules are not acts of Congress and can not be treated as such. Having due regard to the mechanics of legislation and the practical conditions surrounding the business of Congress when the Rules were submitted, to draw any inference of tacit approval from non-action by Congress is to appeal to unreality. And so I conclude that to make the drastic change that Rule 35 sought to introduce would require explicit legislation.

*Sibbach, supra* at 18, 61 S.Ct. at 428–429.

The relevance of this remark is confirmed by the Bankruptcy Rules Committee, after a short passage of time, propos-

ing amendments to Rule 5002 as will be noted below.

A perspective as to the difference between substance and procedure is provided by *Associated Dry Goods Corp. v. E.E.O.C.*, 720 F.2d 804, 808–09 (4th Cir.1983) which held an E.E.O.C. administrative disclosure rule was procedural and therefore authorized by statute. The court focused on whether the *rights of parties are affected.* It cited from *Sibbach, supra:*

> One rule for distinguishing the two concepts, however, is well settled. . . .
>
> The test must be whether a rule really regulates procedure—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them. That the rules in question are such is admitted.

▆ One who proposes invalidity of a bankruptcy rule adopted by the Supreme Court which becomes effective after submission to Congress has a "heavy burden." *In Re Moralez, supra.* The burden is to show that the rule is essentially one of substance rather than procedure.

While the burden is heavy, courts will, where warranted, invalidate a rule, *see Meeks, supra.* In *Amstar v. S/S. Alexandros T.*, 664 F.2d 904 (4th Cir., 1981) the Court considered an admiralty rule, stating:

> At the outset, we reject the suggestion that the district court's judgment must be affirmed because inferior courts lack the power to adjudicate the constitutionality of rules promulgated by the Supreme Court. Of course, inferior courts are required to adhere to the Court's decisions. Rule making, however, is a legislative or administrative function

rather than an act of adjudication. Indeed, the Supreme Court has stated: "The fact that this Court promulgated the [Federal Rules of Civil Procedure] as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency." The duty to consider a rule's validity is not limited to the Supreme Court. A district court can refuse to apply a rule when it concludes that "the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." The district court, therefore, did not err when it adjudicated the challenge to the rules' constitutionality. (citations omitted)

▆ As already indicated, aside from general conceptions as to legislation being the province of Congress under our tri-partite system, 28 U.S.C. § 2075 granting rule making power to the Supreme Court under Title 11 limits the subject matter of rules to practice and procedure. The Court is precluded from formulating rules which will "abridge, enlarge, or modify any substantive right."

## C.

The question arises, then, as to whether Rule 5002 has added a substantive standard of non-eligibility or disqualification to Title 11, the Bankruptcy Code. Section 327 of the Code relating to the employment of professional persons by a trustee contains no such provision. Prior to enactment of the Code, the inhibition on employment of relatives of a bankruptcy judge appeared in Rule 505 entitled "Nepotism, Influence, and Interest" which was applicable under the former Bankruptcy Act.[3]

---

**3.** Rule 505(a) precluded appointment of trustees or certain persons (not attorneys) who might be "a relative of any judge or referee of the court making the appointment." Rule 505(b) disqualified the judge from appointing or compensating an attorney relative. This rule was not a new departure but directed toward implementing in the bankruptcy court generally applicable *statutes,* 28 U.S.C. § 455, as well as 28 U.S.C. § 458 making ineligible for appointment to any office or duty in any court, the relative of a

justice or a judge. It may be also noted that 18 U.S.C. § 1910 makes it a crime for a judge of any court of the United States to appoint as a receiver or trustee any person related to such judge by consanguinity, or affinity within the third degree. Thus the predecessor of Rule 5002, that is, Rule 505 made it clear that statutes affecting judges of the courts of the United States included bankruptcy judges. It is probable that Rule 505 was redundant, since it is

There has been much discussion of the perception of Congress that cronyism has been a problem in bankruptcy administration, a facet of which was a stated concern with a so-called "bankruptcy ring." H.R. Rep. No. 595, 95th Cong. 1st Sess., 92 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. It is doubtful, however, that there was so widespread an appointment of relatives by bankruptcy judges as to relate the problem of nepotism to that of cronyism. There is nothing in the legislative history to indicate that factors relating to nepotism were involved with the problem of bankruptcy rings, assuming that there was indeed such a problem. Since it was brought to the attention of Congress, it is evident that this body, if it considered that a legislative solution was necessary, would have fashioned one. While a number of legislative steps were taken to insulate the bankruptcy judge from case administration and the appointment process, particularly 28 U.S.C. § 604(f), Congress did not deem it necessary or advisable to pass bankruptcy legislation having relevance to nepotism. Presumably the drafters of bankruptcy legislation knew of existing nepotism statutes and considered that no further legislation was needed.[4]

The United States Attorney argues that Rule 5002 is designed to implement legislation which was directed toward extirpation of the bankruptcy rings or an appearance of unfairness. As stated there is no evidence or indication as to how and what extent the appointment of relatives was ever involved with this perception. In any event, it is clear that the Congress did address the problem of bankruptcy appointments with a view to placing the appointment of a trustee on a more objective basis. 28 U.S.C. § 604(f) requires that for each bankruptcy court the director of the Administrative Office of the United States Courts shall name qualified persons to trustee panels. These trustees may be removed by the director "for cause." Election of trustees by creditors, which probably provided more reason for the perception of bankruptcy rings than any other, has been limited. Bankruptcy Rule 2013 requires that public records be kept of all fees paid from estates to trustees, their attorneys, accountants, appraisers, auctioneers, and other professional persons employed by the trustee. As observed by the advisory committee note to the rule, there is provided a convenient source for public review of fees paid from debtors' estates in the bankruptcy courts. "Thus, public recognition of appointments, fairly distributed and based on professional qualifications and expertise, will be promoted and notions of improper favor dispelled."

It would appear that with a provision by Congress that appointments of trustees (who employ professional persons) would be limited in the first instance to a panel selected by the Administrative Office of the United States, and with the further provision of Rule 2013(a) that their appointments be rotated so that "the annual aggregate compensation of any individual shall not be disproportionate or excessive," and with the publication of the compensation paid to the trustees and those they employ, Congress had taken what it considered to be an appropriate step with respect to the cronyism problem.

unlikely that a judicial officer of the United States, with the power to hear and enter orders and judgments resolving disputes, would not be subject to the foregoing statutes and the Canons of judicial conduct. As to the applicability of Rules relating to bankruptcy court judges presently, see 28 U.S.C. § 451 defining "courts" and "judges" of the United States which include bankruptcy courts and judges appointed under the 1984 amendments to the code.

4. Rule 5002 has no legislative foundation. While it alludes to former Rule 505(a) which is a direct analogue, as noted, of 28 U.S.C. §§ 455 and 458, it has no legislative counterpart of its own. Its reference to the definition section of the code, Section 101(34) as to the term "relative" is, in turn, a reference to a source not related to nepotism since the term "relative" as used by the code involves "insiders" who may be subject to voidable transfers. "Insiders" is defined by Section 101(25) of the code to include "relative." Bankruptcy Rule 9001 authorizes the definition of Section 101 of the Code to be used in application of the Rules. Thus any support for application of the "relative" concept of Rule 5002 is built not on any legislation but on extrapolations from former and present rules.

Congress also, in a number of instances, insulated or removed the bankruptcy judge from the non-judicial or administrative function so that the judge would be primarily involved with the resolution of disputes. Thus, the judge no longer presides or is present at the initial meeting of creditors where the debtor is subject to widely ranging inquiry by creditors. A bankruptcy court may not *sua sponte*, as under the former Act, take steps to initiate hearings as to dismissal or conversion of reorganization cases (leading to the appointment of a receiver or trustee). This can be done only on application of a party in interest. 11 U.S.C. § 1112(b), *In Re Gusam Restaurant Corp.*, 737 F.2d 274 (2d Cir., 1984). The court in *Gusam* observed that Congress in enacting the 1978 Code intended "to permit bankruptcy judges to concentrate on their judicial functions by relieving them of previously existing administrative burdens."

In a number of areas, the administrative function has been assumed by the U.S. Trustee or by estate administrators responsible to the clerk of court. In sum, Congress has substantially altered the duties of the bankruptcy judge thereby emphasizing or defining his or her primary role as a judicial officer or judge of a federal court.

It is apparent that Congress in its effort to deal directly with the problems related to bankruptcy rings and the appearance of bankruptcy judges involvement with litigants, took steps to do so in a manner completely unrelated to the problem of nepotism.

### D.

As already stated, there are a number of provisions related to nepotism which are bankruptcy related directly, or which relate to the appearance of propriety on the part of a judge of the United States. None of these existing provisions nor former Rule 505 involve a relationship beyond that existing between the appointing judge and the appointee. Rule 5002 extends far beyond such a relationship. Its pervasive effect involves an undefined network which may well include the entire federal bench of the particular district court, as well as all persons who are associated in some manner with relatives, or those inappropriately connected with the judge, and thereby ineligible for appointment under Section 327.

It is probable that district judges are subject to the constraints of Rule 5002 by virtue of the closer linkage with bankruptcy courts resulting from the 1984 amendments. Bankruptcy courts which were formerly "adjuncts" of the district court, are now "units" thereof 28 U.S.C. § 151. The same section provides that district judges may sit as bankruptcy judges. 28 U.S.C. § 157(a) provides that district judges may refer bankruptcy cases to bankruptcy judges. Section 157 provides that the district court may withdraw "in whole or in part, any case or proceeding...on its own motion or on timely motion of any party." While one district court has distanced itself from the uniquely wide-ranging conception of nepotism provided for bankruptcy courts by Section 5002, it is questionable that such a ruling should or will have precedential value. *See Hilltop Sand & Gravel Inc.*, 35 B.R. 412 (D.C., N.D.Ohio, 1983) where the district judge, on appeal, reversed a ruling of the bankruptcy judge holding that the trustee, pursuant to Rule 5002 could not retain as counsel an attorney who was associated with a firm in which another associate was the daughter-in-law of one of the judges of the district court to which the bankruptcy court was adjunct.

 It is evident that Rule 5002 includes all persons who are associated with the ineligible appointee and a firm, partnership, corporation "or any other form of business association or relationship, and all members, associates and professional employees thereof" who are also ineligible for appointment or employment. The rule is so broad and pervasive and so far beyond any specific provision enacted by Congress that it takes on a character and nature of its own which bears no discernable relationship to any provision of the bankruptcy code.

The Rule has no relationship to the cronyism problem. It has no relationship to

nepotism as characterized by various statutes. Rule 5002 in its application to bankruptcy courts enlarges and expands the application of such statutes and Canon 3(B)(4) of the Code of Judicial Conduct [5], without any legislative foundation, to a degree not visited upon any other court.

The broadly encompassing effect of Rule 5002 has resulted in many complaints and difficulties particularly as to former law clerks of judges of the bankruptcy courts who encountered apprehension on the part of law firms that all associates would become ineligible to serve as professionals under Section 327. This was especially true with the firms who would be most likely to employ bankruptcy law clerks i.e. those who had a practice in which knowledge of bankruptcy law was significant. As a result of these concerns, the Committee on Rules of Practice and Procedure of the Judicial Conference of the U.S., in August 1984, promulgated a proposed amendment to Rule 5002 which drops the debarring of persons associated with those who are or have been "so connected with such judge as to render the appointment or employment improper." Likewise the language as to "any judge of the court making the appointment" has been eliminated." The committee note makes it clear that the departures of Rule 5002 from standards set by statute and the Canons will be abrogated. Under the proposed modification, Mr. Kreiss' appointment would not be prohibited. As previously indicated relative to Rule 505, the reference to Bankruptcy Judge in that Rule and in Rule 5002 makes it clear that any judge dealing with bankruptcy subject matter is bound by the nepotism constraints of 28 U.S.C. § 455, § 458 and the Canons. Public hearings on the amendment are scheduled for January 17, 1985.

The rule affects the rights of parties, substantively excluding or disbarring them without reference to any statute. It is, essentially, a statement of substantive policy by a judicial body. It contravenes 28

U.S.C. § 2075 and is therefore invalid insofar as it applies to parties other than those designated by statutes such as 28 U.S.C. §§ 455 and 458.

### E.

Before concluding, however, it is requisite to discuss *In Re National Store Fixture Co.*, 37 B.R. 481, 11 B.C.D. 710 (Bkrtcy.W.D.Mo., 1984), reversed on appeal by the District Court order entered September 13, 1984. This case involved the application of Rule 5002 to the appointment of a trustee by a bankruptcy judge where the trustee was a member of a firm which included an associate who was the son of another sitting bankruptcy judge. The bankruptcy court upheld the appointment, holding Rule 5002 unconstitutional and void because it denied due process, right of association, and the right to practice a profession. The trial court, while its primary focus was on the constitutional issues, also held that the rule violated 28 U.S.C. § 2075 because it abridged and modified substantive rights.

On appeal the District Court, also addressing, primarily, the constitutional issues, concluded that the criterion for examination of the propriety of the rule was not strict scrutiny but rational basis. Applying this standard the court concluded that there was a reasonable basis for holding that the rule would promote a legitimate interest.

The District Court, while noting the ruling of the court below that Rule 5002 exceeded the statutory limitation of 28 U.S.C. § 2075, did not address the issue as to whether it affected substantive rights other than to state:

> Plaintiff contends that the Supreme Court in passing Bankruptcy Rule 5002 did so in violation of § 2075 since it abridged and modified the rights of the trustee. Initially, the court notes that this section apparently speaks to the Supreme Court's ability to abridge, enlarge,

---

**5.** The judge "shall exercise his power of appointment only on the basis of merit, avoiding nepo-

tism and favoritism..."

or modify substantive rights of the *litigants* involved in a particular action. The rule does not apply to the Supreme Court's ability to restrict an individual's right to be appointed as trustee in a particular case. (Order, p. 9)

The court appears to have been of the view that the trustee, not being eligible for appointment by virtue of the rule, was not a litigant and therefore, in a general sense, without standing. No authority or justification is cited or discussed for the designation of the trustee as a non-litigant consequently subject to rules of judicial origin limiting or abridging his eligibility for appointment from the panel provided for by 28 U.S.C. § 604(f). The language of 28 U.S.C. § 2075 is unqualified in its direction that substantive rights shall not be affected. It provides no basis for excepting certain categories of persons who may be excepted from its application.

The court also adverted to cases which accord to court rules a strong presumption of validity including *In re Moralez, supra,* which alluded to the "heavy burden" carried by the party contending such invalidity. However, the court nowhere examines the question of whether the rule is one of substance or procedure or whether it affects substantive rights. There is a discussion which appears to justify passage of the rule because

> The rationality of a Supreme Court rule will be presumed absent a clear showing of arbitrariness and irrationality. Rule 5002 bears a rational relation to a legitimate government interest—the elimination of any appearances of impropriety in the bankruptcy court system. (Order p. 10)

The foregoing language applies to the case the rational basis standard for considering the constitutionality of substantive provisions of law affecting the rights of parties. Section 2075, however, precludes rules affecting substantive rights, and, therefore the application of the rational basis standard to Rule 5002 is inappropriate. In any event, a major premise of this memorandum is that Congress, since it presumably had in mind the problem set forth in its own legislative hearings and history cited by the court, presumably dealt with the problem. If it did not, it is difficult to see that Rules may provide for legislation, presumably overlooked by Congress.

The decision of this court is grounded on Rule 5002 being inappropriately substantive. Discussion of the constitutional issues is therefore unwarranted. The ultimate holding in *National Store Fixture* did not basically address itself to the issue on which this decision turns and is therefore not persuasive or binding.

Because of the non-constitutional basis for this decision it is neither necessary nor appropriate to discuss the constitutional issues. *Cohens v. Virginia,* 6 Wheat. 264, 441, 5 L.Ed. 257 (1828); *Ashwander v. T.V.A.,* 297 U.S. 288, 346–348, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936); *Kent v. Dulles* 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).

It is therefore ORDERED that the trustee Robert Steinberg be and he is authorized to retain and employ, pursuant to 11 U.S.C. § 327, Robert Kreiss, as his attorney and general counsel in this proceeding.