**In re DAILY CORPORATION, Debtor.**

**Bankruptcy No. 86–00401F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 17, 1987.

Marvin Krasny, John F. Murphy, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for debtor, Daily Corp.

Edward J. DiDonato, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for Creditors' Committee.

## OPINION

BRUCE FOX, Bankruptcy Judge:

At issue before me is the power of this court to dismiss a chapter 11 bankruptcy case sua sponte. The debtor argues that this court does not have any power to act pursuant to 11 U.S.C. § 1112(b) and that the recent amendment to 11 U.S.C. § 105(a) is not yet effective in this district. Thus, the debtor asserts that I am without any authority to act on my own motion.

### I.

On January 20, 1986, this debtor filed a voluntary petition in bankruptcy under chapter 11. A committee of unsecured creditors was then appointed under 11 U.S.C. § 1102 which retained counsel as permitted by 11 U.S.C. § 1103. On April 29, 1986 the first meeting of creditors was held. To date, no reorganization plan or disclosure statement has been filed; therefore, on March 10, 1987, a hearing was

scheduled for the debtor to show cause why this case should not be dismissed for reasons set forth in 11 U.S.C. § 1112(b)(2)–(4)—that is, for the debtor's failure to propose a plan or otherwise prosecute its case.

Notice of this hearing was provided, *inter alia*, to the debtor and the creditors' committee. The debtor's counsel attended and challenged this court's power to act on its own motion. The committee's counsel attended and took no position on this question and declined the opportunity to brief the issue. Clearly, the committee has made no motion, either written or oral, seeking dismissal or conversion of this matter, although it does not appear to be opposing dismissal or conversion. *See In re Tiana Queen Motel*, 749 F.2d 146 (2d Cir. 1984), *cert. denied*, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985) (creditor's oral motion to dismiss is sufficient under § 1112(b)). Thus, any action taken in this matter would be sua sponte.

## II.

Prior to its amendment in 1986, 11 U.S.C. § 1112(b) permitted a court to dismiss a chapter 11 case, or convert it to one under chapter 7, solely "on request of a party in interest."[1] In interpreting this particular phrase, most courts concluded that a bankruptcy court was not a party in interest and thus could not act sua sponte. The leading case for this holding is *In re Gusam Restaurant Corp.*, 737 F.2d 274 (2d Cir.1984) (*"Gusam"*). *Accord, e.g., In re Moog*, 774 F.2d 1073 (11th Cir.1985); *In re Mandalay Shores Co-Op Housing Association, Inc.*, 63 B.R. 842, 853 (N.D.Ill.1986); *Cournoyer v. Town of Lincoln*, 53 B.R. 478, 486 (D.R.I.1985), *aff'd*, 790 F.2d 971 (1st Cir.1986). *Matter of Lozano*, 42 B.R. 971 (D.P.R.1984); *In re Management Data Services, Inc.*, 43 B.R. 962, 968–69 (Bankr. W.D.Wash.1984). *See also* 5 *Collier on Bankruptcy* ¶ 1112.03[4] (15th ed. 1987). In reaching this conclusion, these courts (and commentator) have looked to the legis-

lative history surrounding both § 1112(b) and the Code itself.

The original House version of § 1112(b) contained only the language "party in interest" while the Senate version expressly provided that a bankruptcy court could dismiss or convert a case on its own motion. *Compare* H.R. 8200, 95th Cong., 1st Sess. (1977) *with* S. 2266, 95th Cong., 1st Sess. (1977). The Senate conferees acquiesced to the House version which became law. In their statements, Congressman Edwards and Senator DiConcini made clear that the House version was adopted to prevent bankruptcy courts from acting sua sponte. 124 Cong.Rec. 32,393 (1978) (statement of Cong. Edwards); 124 Cong.Rec. 33,993 (1978) (statement of Sen. DeConcini); *accord, Gusam*, 737 F.2d at 277. This specific legislative history was buttressed by statements showing a Congressional desire to remove bankruptcy judges from their administrative functions which were part of their activities under the Bankruptcy Act of 1898. *Gusam*, 737 F.2d at 276. Those administrative duties would be assumed by the proposed United States Trustee. *See In re A–1 Trash Pick Up, Inc.*, 802 F.2d 774 (4th Cir.1986), *aff'g*, 57 B.R. 380 (E.D.Va.1986).

Although the legislative history of § 1112(b) seemed to evince a clear legislative intent concerning sua sponte dismissals, not every court agreed with *Gusam's* holding. Some courts looked to Code provisions other than § 1112(b) for their authority to act, such as sections 105(a), 305, 1108, and 1129, and, thus, did not view this legislative history as dispositive. *See, e.g., In re Coram Graphic Arts*, 11 B.R. 641 (Bankr.E.D.N.Y.1981). In addition, *Gusam* did not discuss the generally accepted inherent power of courts to control their dockets and dismiss cases for lack of prosecution, even absent authority from a specific rule or statutory provision. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Titus v. Mercedes Benz of North America*, 695 F.2d 746, 749 (3d Cir.1982); 5

---

1. The provision now reads "on request of a party in interest or the United States Trustee."

*See* Pub.L. No. 99–554, § 224.

*Moore's Federal Practice* ¶ 41.11[2], at 41-109 to 111 (2d ed. 1986) ("Moore's").[2] For some courts, this inherent judicial power over case management was a source of authority separate from § 1112(b). *In re Ray*, 46 B.R. 424 (S.D.Ga.1984); *In re Coram Graphic Arts*, 11 B.R. at 644.

Most interesting was an analysis of legislative history somewhat different from that provided in *Gusam*. That analysis focused upon Congressional statements noting the important public interest in the proper administration of bankruptcy cases and the need for oversight of these cases. For example,

> The practice in bankruptcy is different for several reasons. First, there is a public interest in the proper administration of bankruptcy cases. Bankruptcy is an area where there exists a significant potential for fraud, for self-dealing, and for diversion of funds. In contrast to general civil litigation, where cases affect only two or a few parties at most, bankruptcy cases may affect hundreds of scattered and ill-represented creditors. In general civil litigation, a default by one party is relatively insignificant, and though judges do attempt to protect parties' rights, they need not be active participants in the case for the protection of the public interest in seeing disputes fairly resolved. In bankruptcy cases, however, active supervision is essential. Bankruptcy affects too many people to allow it to proceed untended by an impartial supervisor.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 88 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6050 (footnotes omitted).

The original House version of what ultimately became the Bankruptcy Reform Act of 1978 provided for the creation of the U.S. Trustee position which would assume various administrative and °oversight duties. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 100–102, 104–105 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6061–63, 6065–66. The Senate bill initially did not contain a U.S. Trustee provision and thus reserved to bankruptcy judges those administrative responsibilities. While the Senate may have ultimately accepted the House version of § 1112(b), it did not accept a nationwide U.S. Trustee program. For some courts, depriving a bankruptcy court of the power to act on its own, in those districts where there was no U.S. Trustee system and in those cases where there was no active creditors' committee, was contrary to Congressional intent. *Matter of Nikron*, 27 B.R. 773 (Bankr.E.D.Mich.1983); *accord, In re Harvey Probber, Inc.*, 44 B.R. 647 (Bankr.D. Mass.1984).

The *Gusam* holding also provided theoretical difficulties for courts struggling with the concept of the "good faith" bankruptcy filing. The requirement of "good faith" is not express in the Code but is usually implied based upon an historical analysis. *See In re Victory Construction Co. Inc.*, 9 B.R. 549 (Bankr.C.D.Cal.1981), *order vacated on other grounds*, 37 B.R. 222 (Bankr. 9th Cir.1984). To the extent a statutory source is mentioned, the most common has been § 1112(b) ("cause"). *In re Johns-Manville Corp.*, 36 B.R. 727 (Bankr.S.D.N.Y.1984), *leave to appeal denied*, 39 B.R. 234 (S.D.N.Y.1984), *mandamus denied*, 749 F.2d 3 (1984); *Matter of Northwest Recreational Activities, Inc.*, 4 B.R. 36, 39 (Bankr.N.D.Ga.1980). In discussing good faith dismissals, courts have relied upon administrative oversight concepts designed to protect both the court and creditors from debtor abuse:

> Good faith, in the sense perceived by this court to have continued relevance, is merged into the power of the court to protect its jurisdictional integrity from schemes of improper petitioners seeking to circumvent jurisdictional restrictions and from petitioners with demonstrable

---

**2.** Although Fed.R.Civ.P. 41(b) makes no mention of the district court's power to act sua sponte, that power is generally recognized. 5 Moore's ¶ 41.11[2]. Bankr. Rules 7041 and 9014 incorporate Fed.R.Civ.P. 41 into both adversary proceedings and contested matters. Thus, it would appear that, at least in core matters, bankruptcy courts can dismiss some proceedings on their own motion.

frivolous purposes absent any economic reality.

*Matter of Northwest Recreational Activities, Inc.,* 4 B.R. at 39. Courts dealing with the good faith issue, sua sponte, have almost been forced to carve out an exception to the *Gusam* holding. *See Matter of Little Creek Development,* 779 F.2d 1068, 1071 n. 1 (5th Cir.1986).

### III.

Against this background, Congress passed the Bankruptcy Judge, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554 (1986 Act), with an enactment date of October 27, 1986. The main purposes underlying the 1986 Act were the authorization of additional bankruptcy judges, the creation of a new chapter 12 to assist economically distressed family farmers, and the phased nationwide expansion of the United States Trustee program. In addition, § 203 of the 1986 Act states:

SEC. 203. POWER OF COURT.

Section 105(a) of title 11, United States Code, is amended by adding at the end thereof the following new sentence: "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process".

This section was not contained in the original bill, H.R. 5316, but was added after a conference between House and Senate. The conference report makes no mention of § 203. The only legislative history surrounding its passage comes from a statement of Senator Hatch:

---

**3.** This recent amendment has also cited as a source of civil contempt power for bankruptcy judges. *In re Haddad,* 68 B.R. 944, 947–49 (Bankr.D.Mass.1987).

**4.** Subtitle A contains Section 201 through 231 of the Act. § 203 is but one of only three sections in Subtitle A which does not make express reference to the U.S. Trustee. The other two sections, however, are at least related to the U.S. Trustee program in some fashion. Section 225

The bill also allows a bankruptcy court to take any action on its own, or to make any determination to prevent an abuse of process and to help expedite a case in a proper and justified manner.

Cong.Rec. S. 15092 (October 3, 1986).

Although *Gusam* refused to consider § 105(a) as a source of bankruptcy court authority to act sua sponte, Congress decided to amend this section in order to overrule the *Gusam* holding. *2 Collier on Bankruptcy* ¶ 105.01, at 105–2.1 (15th ed. 1987).[3]

The debtor does not contest that § 105(a), as amended, gives this court the power to dismiss a chapter 11 case on its own motion. Instead, it points out that § 203 is located in Title II, subtitle A of the 1986 Act. This subtitle, with the heading "Activities of the United States Trustees," contains statutory provisions involving the expanded U.S. Trustee program.[4] While § 302(a) of the 1986 Act generally states that all provisions of the Act will be effective thirty days after enactment, certain exceptions to this effective date are made. Sections 302(a) and (d)(1) state that all provisions of subtitle A of Title II only become effective, in Pennsylvania's judicial districts, the earlier of 270 days from enactment or thirty days from the date the U.S. Trustee program is certified as in operation in these districts. Congress believed that the U.S. Trustee program would be in place in Pennsylvania, which is grouped with the New Jersey pilot program district, within 270 days. H.R.Rep. No. 764, 99th Cong., 2d Sess. 29 (1986), U.S.Code Cong. & Admin.News 1986, p. 5227. Since the 270 day period has not yet expired and no U.S. Trustee has been certified for this district, the debtor argues that § 203 of the 1986

refers to 28 U.S.C. § 1930, (as amended in § 117), which provides, in part, that quarterly fees in chapter 11 cases will be payable to the U.S. Trustee. Section 227 amends the portion of proposed 11 U.S.C. § 1202 to the extent it would have permitted the Court and not the U.S. Trustee to appoint a standing trustee in chapter 12 cases. Section 231 repeals chapter 15 of Title 11, which had collected the U.S. Trustee provisions for the pilot districts.

Act is not in effect and the *Gusam* line of authority is still in place.

In essence, the debtor's position, which is literally correct, is that Congress has decided to allow bankruptcy courts the authority to dismiss, sua sponte, a chapter 11 case for lack of prosecution, but only after a U.S. Trustee is in place in that particular district. Until that time, the court cannot act on its own. I agree with the debtor that the statute seems to yield this result; yet, longstanding principles of statutory construction require more than a literal reading to determine the meaning of a particular provision.

It is not the function of this court or any other court to usurp the powers of Congress and enact legislation. Courts are to interpret statutes so as to implement legislative intent, which is usually expressed in the language of the statute itself. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). "However, reliance on the literal language of a portion of a statute is improper if it leads to an interpretation which is inconsistent with legislative intent expressed elsewhere in the statute or legislative history, or to an absurd result." *S.E.C. v. Ambassador Church Finance Development Group, Inc.*, 679 F.2d 608, 611 (6th Cir. 1982); *accord, e.g., United States v. American Trucking Associations*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *In re Adamo*, 619 F.2d 216, 222 (2d Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980) (in refusing to apply literally a repealer and enactment provision of the Bankruptcy Reform Act of 1978, the court noted "a statute should not be applied strictly in accord with its literal meaning which to do so would pervert its manifest purpose"); *In re Raimondi*, 126 F.Supp. 390, 492 (N.D.Cal.1954) (court refused to literally interpret Immigration and Nationality Act of 1952 which on its face seemed to create a gap between enactment and effective date when that gap was contrary to reason and legislative purpose); *In re Pulaski Highway Exp. Inc.*, 41 B.R. 305, 309 n. 7 (Bankr.M.D.Tenn.1984); *In Matter of Nikron, Inc.*, 27 B.R. at 776–77.

Recently, I have refused to interpret the effective date of § 117 of the 1986 Act literally and held that the effective date must be determined in conjunction with § 407(b) of the Judiciary Appropriation Act of 1987, Pub.L. No. 99–500. *In re Dinan*, 71 B.R. 195 (Bankr.E.D.Pa.1987). In addition, courts have been struggling with § 302(c)(1) of the 1986 Act because it seems to limit the provisions of chapter 12 only to those cases commenced after the effective date of the act. A strict interpretation would prevent farmers with pending chapter 13 or 11 cases from converting to chapter 12. While some courts have applied § 302(c)(1) literally, *see In re Albertson*, 68 B.R. 1017 (Bankr.W.D.Mo.1987) (language of § 302(c)(1) is clear and must be applied), others have noted the legislative statements found in The Joint Explanatory Statement of the Committee of Conference. Cong.Rec. H. 8998, 8999 (October 2, 1986), to conclude that Congress did not intend to bar conversions to chapter 12. In *In re Erickson Partnership*, 68 B.R. 819, 825 (Bankr.D.S.D.1987), the court stated:

> Another possibility which is more probable is that, in the final process of legislation, Congress inadvertently placed Sections 1112(d) and 1307(d) amendments within Subtitle B. The misplacement in Subtitle B was important because it brought the amendment of these sections within the restrictive language of Section 302(c)(1) regarding the effective date and, thus, in apparent conflict with Congressional leaders' remarks and the Joint Explanatory Statement. Judge Kressel, in his order issued in In re Waetjen, BKY 4–86–3335 (Bkrtcy.D.Minn. Nov. 26, 1986), alluded to the "hectic and even chaotic conditions of the last days of the 99th Congress."

In divining legislative intent surrounding the passage of § 203, it seems apparent that Congress was not satisfied with the restrictions imposed upon bankruptcy courts by the *Gusam* holding which limited their ability to: control their dockets, prevent abuse, and insure that reorganization cases do not languish to the detriment of legitimate creditor interests. To some extent, Congress' passage of § 203 presaged

the lecture recently given to bankruptcy judges by the Fifth Circuit Court of Appeals:

Early and ongoing judicial management of Chapter 11 cases is essential if the Chapter 11 process is to survive and if the goals of reorganizability on the one hand, and creditor protection, on the other, are to be achieved. In almost all cases the key to avoiding excessive administrative costs, which are borne by the unsecured creditors, as well as excessive interest expense, which is borne by all creditors, is early and stringent judicial management of the case. We recognize that Congress, in 1978, amended the bankruptcy laws with the intention of removing bankruptcy judges from the administration of the debtor's estate. The purpose of this amendment was to insure the impartiality of the bankruptcy judge. We do not believe, however, that Congress thereby intended to relieve the bankruptcy judge of the responsibility of managing the cases before him in such a way as to promote the objective and goals of the Bankruptcy Code. Our conclusion in this respect is strengthened by the fact that the bankruptcy court is an adjunct of the district court. District court judges function under Fed.R.Civ.P. 16 with full power and responsibility to manage their cases and with the directive to move their cases in such a way as to promote fairness to the parties and judicial economy. These responsibilities are not incompatible with their judicial function; indeed, they are at the core of it. We recognize that the line between administration of the debtor's estate that would jeopardize the bankruptcy judge's impartiality and effective case management may sometimes be a difficult one to draw. Nevertheless, we think that each bankruptcy judge is called upon to manage the cases in front of him, fairly and impartially, in such a way as to promote their orderly and prompt disposition. The difficulty in ascertaining where the line is to be drawn cannot be an excuse for a judge's abdication of his responsibility to function as a judge.

*In re Timbers of Inwood Forest Associates Ltd.*, 808 F.2d 363, 373–74 (5th Cir.1987) (en banc) (footnote omitted).[5]

In asserting its interpretation of the 1986 Act, the debtor offers no explanation why Congress sought to delay the amendment to § 105 until the arrival of the U.S. Trustee. As the court in *Nikron* noted, the need for court authority to act on its own is greatest when there is no U.S. Trustee in place. 27 B.R. at 777. Indeed, an analysis of the trustee's powers under the 1986 Act supports the *Nikron* thesis. One of the express functions of the U.S. Trustee, as stated in § 113(a)(2)(G) of the 1986 Act, (which amends 28 U.S.C. § 586(a)), is:

Monitoring the progress of cases under Title 11 and taking such actions as the United States Trustee deems to be appropriate to prevent undue delay in such progress;

In addition, § 224 of the 1986 Act amends § 1112(b) to clearly grant to the U.S. Trustee the authority to request dismissal or conversion of a chapter 11 case.[6]

To the extent the U.S. Trustee will now be overseeing the prompt administration of reorganization cases, there is little need for a court to do so. In fact, a bankruptcy court should exercise its sua sponte powers to dismiss or convert most sparingly and defer to the U.S. Trustee in whom Congress has seen fit to delegate such authority. Therefore, it makes little sense to infer that Congress intended only to provide such powers to judges when their districts have a U.S. Trustee.[7]

For these reasons, I conclude that Congress made a technical error when it placed the amendment to 11 U.S.C. § 105(a) within

---

**5.** This admonition challenges an assumption made by *Gusam*—that dismissing a case, sua sponte, for failure to prosecute is outside the normal judicial function.

**6.** Apparently, this amendment was designed to cure any ambiguity concerning the trustee's power under § 1112(b). *See* 5 *Collier on Bankruptcy* ¶ 1112.03[a] (15th ed. 1987).

**7.** In some districts, there may be no trustee in place for two to five years. *See* 1986 Act, § 302(d)(2), (3).

subtitle A of Title II of the 1986 Act. *Cf. In re Erickson Partnership* (involving issue of conversion of pending chapter 11 and 13 cases to chapter 12). As I noted previously, § 203 is the only provision of subtitle A that has no connection with the U.S. Trustee program. *See* note 4, *supra.* In contrast to subtitle A, subtitle C of Title II is entitled "Miscellaneous Amendments and Technical Correction to Title II." These provisions took effect thirty days from enactment. 1986 Act, § 302(a). § 203 represents a miscellaneous amendment to title 11, distinct from the main purposes of the 1986 Act. A fair reading of the entire 1986 Act, along with the stated purpose behind the enactment of § 203, force me to conclude that Congress intended its provision to become effective on November 27, 1986. Therefore, this court now has the power to dismiss matters sua sponte.

An appropriate order will be entered.

### ORDER

AND NOW, this 17 day of April, 1987, it is ORDERED that a hearing for the debtor to show cause why the above-captioned bankruptcy case should not be dismissed pursuant to 11 U.S.C. § 1112(b) shall be held on April 28, 1987, at 10 A.M. in Bankruptcy Courtroom No. 1.