In re MATTIACE INDUSTRIES, INC., Debtor.

Bankruptcy No. 886–60499–18.

United States Bankruptcy Court, E.D. New York.

July 31, 1987.

Angel & Frankel, P.C., Philip L. Tomich, New York City, for debtor.

Robert Abrams, Atty. Gen., of N.Y. by Louise A. Halper, Asst. Atty. Gen., New York State Dept. of Law, Environmental Protection Bureau, Sherman, Citron & Karasik, P.C., New York City, for Creditors Committee.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

The court after hearing the motion brought by the Attorney General of the State of New York (hereinafter "State") to dismiss or convert the Mattiace Industries, Inc.'s (hereinafter "debtor") Chapter 11 bankruptcy petition, finds after due deliberation based on the credible testimony adduced and the exhibits marked in evidence that a dismissal of the Chapter 11 petition is warranted.

The above finding is premised on the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On April 11, 1986 several of the debtor's creditors, pursuant to § 303 of the Bankruptcy Code, filed a petition to place the debtor into involuntary bankruptcy.

2. On May 7, 1986 the debtor moved to convert the involuntary petition to a Chapter 11 proceeding. No opposition to the motion by the State or any party in interest was raised and accordingly the motion was granted.

3. On September 11, 1986 the court granted the debtor's motion to extend its time to file a plan of reorganization from September 4, 1986 to October 6, 1986 pursuant to 11 U.S.C. § 1121(d). Neither the State nor any party in interest appeared in opposition to the motion.

4. No other application for extension was received nor was the exclusivity period further extended by the court. No plan was filed on October 6, 1986 and to date no plan has been filed by the debtor.

5. State's expert witness, Dr. Christopher Vancantfort, was duly qualified as an expert witness by his educational background and experience in the environmental protection field. The court found Dr. Vancantfort's testimony knowledgeable and credible.

6. The testimony clearly established that the debtor has for many years and continues to maintain a hazardous waste site in violation of State and other environmental regulatory laws.

7. In context, Dr. Vancantfort's testimony established the following:

a.) That the debtor's operation consists of mixing hazardous petrochemicals and volatile compounds on the two and one-half acre site situated in the City of Glen Cove without proper containment equipment to insure the health and safety of the community.

b.) That engineering investigations of the debtor's petrochemical site by Woodward-Clyde Consultants, Inc., received in evidence, show that the hazardous constituents handled by the debtor are volatile organic compounds and that the site is heavily contaminated.

c.) The surface water run-off at the site contains chemical residual contamination resulting from continuous dumping, spilling and leakage in the course of the debtor's petrochemical operation and that debtor has no viable or acceptable means of disposing of the hazardous materials.

d.) The site lacks appropriate operating drainage systems and the existing system is in a state of gross disrepair and is extensively plugged with sediment. During peri-

ods of rain, quantities of run-off accumulate in puddles. The site does not have a proper system to prevent and safeguard the contaminated water from spilling over into the surrounding area nor from preventing it from further contaminating the ground surface water, thus constituting a serious threat to the Glen Cove wells supplying drinking water to the community.

e.) The above-ground tanks purportedly comprising a part of the system for the removal of contaminated surface water by the process of aeration are in disrepair and upon inspection by Dr. Vancantfort found to be inoperative.

8. The Woodward-Clyde study further established that there is a high concentration of volatile hazardous organic compounds polluting the ground water. The same contamination pattern is found in both the soil and surface water.

9. Robert Albanese was called by the debtor as its expert witness and was duly qualified as an expert.

10. Mr. Albanese testified that he was proposing on behalf of the debtor a pilot or experimental system to cure the health and hazardous condition that now exists at the site. He estimated the cost of the project at $250,000. Mr. Albanese's testimony also sought to rebut Dr. Vancantfort's testimony. The court finds that Mr. Albanese's testimony lacks the essence of credibility. The court was not satisfied with his testimony with reference to the buried drums of hazardous waste. He testified that they were not on the debtor's property, whereas the evidence clearly shows that M & M Corp., a division of the debtor, buried the drums whether on their property or the immediate adjoining property. No estimate of cost to remove these drums was testified to by Mr. Albanese. The figure of $250,000 proposed by Mr. Albanese for an adequate system to rectify and clean up the hazardous condition is unrealistically low.

11. Dr. Vancantfort in counterpoint to Mr. Albanese, stated that a study in contemplation of designing a clean-up plan will cost approximately $250,000. However, the actual cost of clean-up is estimated to be more than $1,000,000. It is abundantly clear that the debtor does not have the funds to effectuate the requisite clean-up of the site.

12. Each day that the debtor operates, it increases the contamination at the site and its liability for the cumulative effect of surface and ground water contamination increases.

13. The debtor has failed to date to submit to the State pursuant to the applicable law an acceptable plan for a cleanup in compliance with the provisions of environmental safety.

14. The third witness, Robert Beckerer, regional waste engineer for the State of New York, was called as the State's witness. His testimony corroborated Dr. Vancantfort's finding that there is ongoing contamination at the debtor's site and adopted Dr. Vancantfort's projected clean-up cost.

15. The record discloses that the debtor throughout its Chapter 11 life has failed in the most part to pay Social Security and withholding taxes and is accordingly in violation of this court's order dated July 15, 1986.

16. That the history of the debtor reflects either an inability or lack of intent to operate its business within the standards of safety promulgated by the regulatory agencies of the United States, State of New York and the City of Glen Cove.

17. The creditors committee has stated that in its opinion the debtor lacks the ability to propose a viable plan and further lacks the funds to financially implement same. The creditors committee supports dismissal of the case rather than conversion to Chapter 7.

18. That the court finds that there is no reasonable prospect of the confirmation of an acceptable plan of arrangement.

DISCUSSION

The State seeks conversion to Chapter 7 or in the alternative a dismissal of the Chapter 11 case.

Section 1112(b) provides inter alia:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and

after notice and a hearing, the court may convert a case under this chapter [11 U.S.C.A. §§ 701 et seq.] or may dismiss a case under this chapter [11 U.S.C.A §§ 1101 et seq.], whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title [11 U.S.C.A. § 1121] within any time fixed by the court.

The court's determination under § 1112(b) can be made: "on request of a party in interest"; "after notice and hearing"; and "for cause." *See*, 5 Collier on Bankruptcy ¶ 1112.03[2] p. 1112–10 (15th ed. 1979). The State of New York claims a right to move in this matter as a party in interest pursuant to 11 U.S.C. § 1109(b):

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

The case authority and legal precedence articulating the above concept is found in the decisions following: *In re Cashe Currency Exchange*, 37 B.R. 617 (N.D.Ill.1984), *aff'd.*, 762 F.2d 542 (7th Cir.1985); *In re Citizens Loan and Thrift Co.*, 7 B.R. 88 (Bankr.D.Iowa 1980); and *In the Matter of Jesus Loves You, Inc.*, 46 B.R. 37 (Bankr. M.D.Fla.1984).

It should be noted that the Bankruptcy Code as amended in 1986 enables the bankruptcy court to act sua sponte to prevent an abuse of the process. § 105 as amended; *In re Daily Corp.*, 72 B.R. 489, 15 B.C.D. 1024 (Bkrtcy.E.D.Pa.1987).

The State contends that the debtor poses a serious health hazard to the surrounding community by its unabated and reckless contamination of the site. Unfortunately, it may not be possible to completely remedy the past pollution but the court will not allow the debtor to continue operating under the protection of the bankruptcy court while continuing to dump toxic chemicals polluting the environment. It is implicit that the legislative intention of Congress was not to permit the operation of a business for profit that constitutes a threat to the health and welfare of the public, nor that the bankruptcy court serve as a refuge for Chapter 11 polluters. *See, Berry Estates, Inc. v. State of New York, (In re Berry Estates)*, 812 F.2d 67 (2nd Cir.1987).

The State further argues that the appointment of a trustee would be the most effective means of terminating these operations. However, the boundaries of the trustee's duties and scope of liability in this type of case remain potentially unlimited and untested. A court appointed trustee would be obligated to clean up the site, *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 711–12, 83 L.Ed.2d 649 (1985).

In the above case, the Supreme Court reviewed a request by the State of Ohio for compensation in cleaning up a toxic waste site of a debtor-in-possession holding that anyone in possession of the site, whether it is the debtor or another, must comply with the environmental laws of the State.

Thus it is implicit that a trustee must comply with the environmental laws of the State or any other regulatory power. The Supreme Court in its most recent decision has clearly stated that the trustee has an affirmative duty to clean up the site and comply with State laws. *See, MidAtlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986). Likewise, the court in *In re Commercial Oil Service*, 58 B.R. 311 (Bankr.N. D.Ohio 1986) stated that a trustee might be liable for failing to clean up the site as well as for any injuries resulting from a failure to do so. Further in the same context, *see, In re Charles George Land Reclamation Trust*, 30 B.R. 918 (Bankr.D.Mass.1983), stating that the court does not believe that the trustee who is unfamiliar with hazardous waste disposal should bear such a tremendous burden. It may prove impossible for any trustee under the facts and circum-

stances of this case to comply with State law and manage the debtor's site with the estate's limited resources.

Premised on the foregoing, the court is constrained to deny the State's motion to appoint a trustee in this case, but rather finds that dismissal of the Chapter 11 is preferable.

CONCLUSIONS OF LAW

1. The court concludes that the State has clearly met its burden of proof by a fair preponderance of the evidence supporting a dismissal of the Chapter 11 case pursuant to the dictate of 11 U.S.C.A. § 1112(b)(1), *i.e.*, that there is a continuing loss or diminution of the estate and absence of a reasonable likelihood of rehabilitation.

2. That the evidence establishes beyond doubt that the debtor is unable to effectuate a plan. 11 U.S.C.A. § 1112(b)(2).

3. That the history of Chapter 11 proceeding evinces an unreasonable delay by the debtor that is prejudicial to its creditors. 11 U.S.C.A. § 1112(b)(3). *See, A. Illum Hansen, Inc. v. Tiara Queen Motel, Inc., (In re Tiara Queen Motel, Inc.)*, 749 F.2d 146 (2d Cir.1984), where the court stated: "The purpose of 1112(b) is not to test debtor's good faith; it is to provide relief where debtor's efforts, however heroic, have proven inadequate to the task of reorganizing his affairs effectively within a reasonable amount of time.... Where 15 months had elapsed from the filing of Chapter 11 petition ... the judge's decision was a justifiable exercise of his discretion."

4. That the debtor has failed to propose a plan under Section 1121 of 11 U.S.C.A. within the time fixed by the court.

Accordingly, the motion is granted and the case is dismissed.

It is SO ORDERED.